GARRETT v. WEINBERG.

1. EVIDENCE—GENERAL REPUTATION.—INSOLVENCY may be shown by general reputation.
2. IBID.—IBID.—Ownership of land cannot be shown by general reputation.
3. APPEAL.—Ruling in admission of testimony involving question of fact cannot be reviewed on appeal.
4. IBID.—EXCEPTION.—Unless record shows that appellant moved to exclude testimony, its admission cannot be used as basis of an exception.
5. JUDGMENT.—This Court on former appeals only ruled on questions of law presented, and decided no fact relative to title.

6. CHARGE.—Presiding Judge did not intend to exclude. from the jury any evidence used at former trials and properly introduced here.
7. APPEAL—CHARGE.—If trial Judge makes mistake in stating issues, and this is to be used as a ground of appeal, his attention must be called to it at the time.
8. EXCEPTIONS.—THIS COURT is not required by the Constitution to state its reasons for conclusions upon exceptions, which do not *distinctly* state the points intended to be raised thereby.
9. NEW TRIALS.—Circuit Judge passed on all of plaintiff's grounds of motion for new trial and committed no judicial error.
10. IBID.—APPEAL.—Where there is evidence tending to sustain the verdict, refusal of new trial will not be disturbed.
11. .CHARGE.—Where the law applicable to the issues in the case has been charged, this Court will not interfere, in absence of special requests as to particular views of the law.
12. REHEARING refused.

Before ALDRICH, J., Sumter, March, 1899.   Affirmed.

Action for possession of interest in land and partition by John A. Garrett *et al.* against Rosa Weinberg *et al.*   From judgment for defendants, plaintiffs appeal.

*Messrs. A. B. Stuckey* and *Thos. S. Moorman,* for appellants, cite: *Title to land cannot be proved by common report:* 48 S. C., 477; 26 S. C., 231.   *Error for Judge not to charge law applicable to all the testimony:* 47 S. C., 521; art. V., sec. 26, Con.; 2 DeS., 452; 13 Ired., 404; 65 N. C., 288; 78 N. C., 523; 87 N. C., 547; 93 N. C., 523; 94 N. C., 96; 104 N. C., 800; 46 Ia., 399; 12 Ohio St., 312; 4 Holst., 149; 11 Wheat., 59; 21 S. C., 596; 27 S. C., 609.   *The words "devise title to" and "claim title from," are erroneously used interchangeably:* 4 Rich., 558; 25 S. C., 459.   *As to proof of common source through deed of tenant in common:* 39 S. W., 779; 33 S. C., 173; 50 S. C., 293; 32 S. C., 136; 53 S. C., 216; 15 S. C., 269; 5 Rich. L., 545.   *It is error to give inconsistent instructions:* 22 S. C., 133; 52 S. C., 224.   *Jury must decide if party has traced title to common source:* 53 S. C., 24; 68 Me., 475; 27 Mo., 205; 63 Mo., 137; 14 Pa. St., 205; 21 How., 146; 17 How., 182; 17 Wall, 123; 11 Wheat.,

59; 2 C. C. A., 546; 94 Cola., 269. *As to charge upon matters of fact:* 49 S. C., 496. *Title is conferred by ten years adverse possession:* 50 S. C., 293, 457; 108 Ill., 576; 53 S. C., 51.

·   *Messrs. Lee & Moise,* contra, cite: *This Court will not pass on questions not made below:* 53 S. C., 77, 358. *Insolvency may be shown by common repute:* 8 Minn., 148; 32 Mo., 4; 6 Gill & J. (Md.), 63; 10 Allen. (Mass.), 493; 33 Vt., 414; 3 Gray, 594. *Relevancy of testimony is for Circuit Judge:* 17 S. C., 134; 48 S. C., 136. *As to admission of record of lost deeds:* 49 S. C., 247; 43 S. C., 370; 92 N. Y., 617; 74 Me., 127; 92 N. Y., 617; 56 Wis., 249. *As to the degree of search:* 15 Pick. (Mass.), 368; 32 Ala., 719; 1 Hill (N. Y.), 72; 3 W. and S. (Pa.), 291; 11 Vt., 470; 8 Ind., 118; 3 Pick., 284; 9 Gray, 31; 6 Jones (N. C.) L., 82; 49 Cal., 671; 80 Ala., 314; 14 S. C., 593. *Proof of loss is within discretion of Judge:* 17 S. C., 587; 35 S. C., 312; 19 S. C., 601. *Loss must be shown before contents:* 35 S. C., 312; 2 Rich., 144; 5 Rich., 372; 2 Hill, 542; 47 S. C., 500. *And this is for Circuit Judge:* 43 S. C., 370; 13 S. E. R., 11, 1019; 11 S. E. R., 322. *Public officer is presumed to do his duty:* 14 S. C., 43; Rich. Eq. Ca., 122; 1 Hill Eq., 269. *Definition of nulla bona:* Harp., 478; 23 S. C., 403; 28 S. C., 103; 13 S. C., 451; 18 S. C., 433. *Immaterial testimony cannot effect case:* 55 S. C., 568; 17 S. C., 578. *Judge must construe written instruments and instruct as to their effect:* 54 S. C., 343. *As to charge on the facts:* 55 S. C., 568; 53 S. C., 533; 54 S. C., 90, 511; 52 S. C., 460; 55 S. C., 32; 56 S. C., 126; 48 S. C., 249; 51 S. C., 281. *Appellant should have requested more extended charge:* 52 S. C., 438; 50 S. C., 49; 49 S. C., 438. *Not error to refuse request when proposition is covered by main charge:* 49 S. C., 587; 54 S. C., 513; 55 S. C., 568; 48 S. C., 364, 195; 52 S. C., 224; 56 S. C., 126. *As to stating issues:* 55 S. C., 32, 414; 52 S. C., 438; 51 S. C., 119; 52 S. C., 371; 54 S. C., 509. *Adverse possession must be shown to continue through entire*

*period:* 24 S. E. R., 900; 22 S. C., 361; 48 S. C., 472; 45 S. C., 318; 25 S. C., 252; 35 S. C., 609; 56 S. C., 263. *No error to refuse a new trial where there is evidence to support verdict:* 52 S. C., 371; 54 S. C., 90; 53 S. C., 215; 23 S. C., 231; 26 S. C., 105; 40 S. C., 89; 42 S. C., 471. *Jurors cannot be heard to impeach their own verdict:* 54 S. C., 154; 2 Bail., 576; 9 Rich., 106; 15 Rich., 312; 57 S. C., 12. *Whether both parties claim from common source is for jury:* 22 S. C., 132. *Receipt not sufficient to constitute color of title:* 2 Hill, 492. *Plaintiffs must connect themselves with grant to complete title:* 45 S. C., 318; 2 Hill, 493. *As to title by adverse possession:* 22 S. C., 361; 24 S. E. R., 900; 48 S. C., 472; 45 S. C., 318; 2 McC., 268; 14 S. C., 43. *As to deeds under execution sale:* 1 Speer, 32; 11 S. C., 54; 1 McM., 257; 13 Rich. Eq., 223.

The opinion was filed October 2, 1900, but remittitur stayed on petition for rehearing until

December 8, 1900. The opinion of the Court was delivered by

MR. JUSTICE GARY. There have been numerous appeals in this case in which the facts are fully set forth. The last trial resulted in a verdict in favor of the defendants.

The plaintiffs appealed on exceptions, the first of which was abandoned.

The second exception is as follows: "II. Because his Honor erred in permitting defendants' counsel, in cross-examination of plaintiff's witness, J. W. Broadway, to ask the following questions, to wit: 'From that time on back for ten or twelve years before that time was his reputation in the neighborhood as being a man who was solvent or of no means?' and 'in reference to Mr. Garrett at that time up to his death and previous as among his neighbors did he have the reputation of holding any property, real or personal?' and 'Was or was not he regarded as a bankrupt?' and in permitting the answer thereto, the same being incom-

petent. (2) And whereas his Honor erred in permitting the same point of testimony to be brought out from witnesses, Warren Wells, John M. Tindall and others." This exception is too general, but waiving that objection, it cannot be sustained, as the sole purpose of the question was to elicit testimony showing the insolvency of Thomas Garrett. General reputation is one of the modes of establishing this fact.

The third exception is as follows: "III. Because his Honor erred in sustaining the objection to the following questions put to witness, E. E. Hodge, by plaintiffs' counsel, in reference to the ownership of any property by Elizabeth Moore, the widow of Thomas Garrett, the following being the questions and answers leading up thereto: Q. Did you know Mrs. Garrett before she married Thomas Garrett? A. Yes, sir. Q. Did you ever know her to have any property? A. No, sir. Mr. Moise: I object. Q. Did she have any other property besides this? Mr. Moise: I object; it is irrelevant. The Court: I sustain the objection. (1) Whereas the same was competent and relevant to show whether it was possible or probable that she ever acquired an independent title to the plantation other than as heir at law of Thomas Garrett." This exception cannot be sustained, as the manner in which the appellants attempted to show ownership of the land is not one of the modes recognized in this State. Furthermore, if there was error, it was harmless, as the witness said he never knew her to have any other property, and this testimony was not struck out.

The fourth exception was abandoned. Likewise the fifth exception.

The sixth exception is as follows: "1st. Because his Honor erred in overruling plaintiffs' objections to the introduction of judgment rolls of said county numbered 4226, 132, 4549, 4636, and 4336, the same having been shown to have been fully paid." In so far as the ruling involved a question of fact, it is not the subject of

review by this Court.    But even if there was error, we fail to see how it prejudiced the rights of the appellants.

The seventh exception is as follows: "VII. Because his Honor erred in admitting in evidence, over the objection of plaintiffs' counsel, the summons and complaints and judgments in former actions between the parties, which resulted in nonsuits for failure to put up security for costs.    Whereas the same were incompetent and irrelevant."    The record fails to disclose the fact that the appellants insisted upon the exclusion of said testimony.

The eighth exception is as follows: "VIII. The charge as excluding the results and the testimony of former trials.    I. Because his Honor erred in charging: 'The statements made in your presence as to there having been former trials, and the results of those trials, are not before you.    You having nothing to do with what took place on those former trials, and you should eliminate from your consideration any and every matter not put in evidence before you, as extraneous to this case, and give it no attention. * * * It is the duty of the jury to take the facts to ascertain the truth in a case from the testimony of the witnesses,' &c. I. In that plaintiffs' counsel having stated in their arguments that the Supreme Court had settled the defense of the twenty years adverse possession by the defendants and those under whom they claim, and the defense of the statute of limitations, both in favor of the plaintiffs, except John A. Garrett, who now claims no interest as the result of a former trial, such was improperly excluded from the jury.    2. In that his Honor erred in not excepting from such charge the result of a previous trial by which the defense of the twenty years adverse possession by the defendants and those under whom they claim, and of the statute of limitations pleaded by defendants, were settled by the Supreme Court in this case. 3. In that such charge was particularly harmful and prejudicial to the rights of the plaintiffs, for the defendants' counsel had read to the jury the above stated defenses as set out in their answers, and in argument to them had pressed to their

attention the long lapse of time calculated for them, that there had been twenty-two years from 1871, when the deed of the Moores was executed to E. W. Moise, to 1893, the commencement of this action. 4. In that in stating to the jury, 'the statements as to what some of the witnesses may or may not have said at former trials are not before you,' his Honor improperly excluded from the jury the reproduction of the important testimony of Mrs. M. C. Hodge, deceased, as contained in a statement of A. B. Stuckey, taken from the printed brief of a former appeal herein, which was read and received by consent in evidence at this trial; also, so much of the testimony of E. E. Hodge in this trial as reproduces, in part, the said testimony of Mrs. M. C. Hodge, now deceased. 5 In that his Honor emphasized the erroneous charge that 'what some of the witnesses may or may not have said at former trials are not before you,' by charging further, 'you take the facts from the witnesses,' etc." The Supreme Court did not undertake to decide any of the facts arising out of the issue of title, but only to rule upon the questions of law presented for its consideration. Furthermore, it is very apparent that the presiding Judge did not intend to exclude from the consideration of the jury any evidence offered upon a former trial, and which had been properly introduced on the trial before him.

The ninth exception is as follows: "IX. The charge as to stating the issues. · 1. Because his Honor erred in charging upon the issue: 'The complaint of the plaintiffs appears in their complaint, the answer of the defendants (to the) cause of action appears in their answer. They have been read, the complaint and the answers, in your hearing several times. The plaintiffs claim that they are entitled to two-thirds interest in the land. * * * The defendants deny that the plaintiffs are the owners and entitled to the possession of any undivided interest * * * and assert that they are the owners in the fee of the land described in the complaint. * * * Now, while not intending to say those are the issues in full, as stated in the complaint and

made by the answer, they will enable you to understand the charge in reference thereto.'   1. Whereas there remained in the case the issues raised by the defense of the twenty years adverse possession by the defendants and those under whom they claim, and of the statute of limitations, and his Honor erred in not stating such issues.   2. And while his charge immediately following this was upon the law as to adverse possession, the jury were permitted to apply the same to the defenses set up in the answers and to the title asserted by the defendants, against which defenses the Supreme Court has already decided that the plaintiffs under same state of facts as proven in this trial are relieved on account of their disabilities, and of which he erred in not instructing the jury."   If in stating the issues raised by the pleadings the presiding Judge made a mistake, his attention should have been called to it, if it was to be made a ground of appeal.

The tenth, eleventh, twelfth, thirteenth and fifteenth exceptions (the fourteenth having been abandoned) are as follows:

"X. The charge as to legal presumptions, and in respect to matters of fact.   1. Because his Honor erred in modifying plaintiffs' second request to charge, viz: 'If the jury believe that Thos. Garrett bought the land in controversy here at sheriff's sale on the 6th day of January, 1829, and paid his bid therefor, the law presumes he received a deed from the sheriff thereto and became thus invested with the title to the land,' by saying, 'that is correct, I charge you that * * * This means that the sheriff having received the moneys, and being a public officer he is presumed to have done his duty and on demand made the title; that is the presumption.'   (1) Whereas, by use of the expression, 'on demand made title,' his Honor in part if not wholly destroyed the force of this request, and erroneously modified the rule of presumption that the title was received on the one hand when the amount of the bid was received on the other.   (2) That by such presumption his Honor erroneously gives the

same presumption to this sale by the sheriff in 1829 as to the sale in 1840, when W. E. Richardson bid off the land, the modification 'on demand' having the same meaning as the words 'when required,' used in the sheriff's receipt in the sale of 1840, and thus making the presumption of a deed in each case the same, such view being also elsewhere emphasized in his charge.

"2. Because his Honor erred in charging that 'if W. E. Richardson bought the land at that sale and paid for it, then that sale passed the land so sold and conveyed to W. E. Richardson all the right, title and interest of Thomas Garrett, and it became the property of Wm. E. Richardson, and the same presumption and the same rule applies as applied to the sale of 1829, when Thomas Garrett purchased the land therein referred to.'  (1) Whereas, this charge ignored an important issue of fact, viz: Whether the deed was ever delivered to Wm. E. Richardson, also whether the bid was made by Wm. E. Richardson for Thomas Garrett, and whether Thomas Garrett returned to him the amount of the bid.  (2) And whereas, the same rule and the same presumption does not apply in each case, for the sheriff's receipt to Wm. E. Richardson states, 'Received of Wm. E. Richardson $353 in full for his bid for the above stated tract of land, titles to be made when required,' and thereby shows that the titles were not made when the bid was paid, but that the legal title remained in Thomas Garrett and that the matter was left open for future adjustment, possibly a return of the purchase moneys by the judgment debtor, as contended for by plaintiffs, and which is strongly supported by other documentary evidence; but that, on the other hand, the sheriff's receipt to Thomas Garrett in 1829, as indorsed on the sheriff's records, being unconditional, absolute and unqualified, the presumption properly arises that he received the deed when the bid was paid.  (3) And whereas, such charge deprived the plaintiffs of any benefit, from the admitted fact that two years after the bid made by Richardson in 1840, he made out and gave to Thomas Garrett an account,

wherein he charged him with such bid, together with the interest thereon from the date of the bid, and the subsequent receipt by Richardson to Garrett of payment of all demands. (4) And whereas, such was a charge in respect to matters of fact in violation of art. V., sec. 26, of the State Constitution.

"3. Because when plaintiffs' counsel requested his Honor to charge the jury in reference 'to the connection of Wm. E. Richardson with that sale,' his Honor erred in charging as follows : 'There are certain papers that have been put in testimony and something that appears on the sheriff's books, judgment rolls and execution. The sale of this land of Garrett's, in the judgment of Hodge *v.* Garrett, was to Wm. E. Richardson. He purchased the property at that sale in 1840. In 1841, there is a receipt or some paper acknowledging W. E. Richardson as the landlord. Gentlemen, I am glad counsel called that to my attention. I intended to have something to say on that line. I have charged you as to the force and effect of that judgment of Hodge *v.* Garrett, and the execution and sale and the purchase of the land by Richardson, and the payment of the purchase money by and the presumption that the deed was made to him, in 1841, when the sheriff's deed was delivered to Wm. E. Richardson, for the presumption was that it was delivered to him under the general presumption that the possession follows the title. Then, if Richardson bought the land at sheriff's sale and got his deed, as against Garrett he owned whatever right, title or interest that Garrett had in that land, and the general presumption is that possession follows the title. Then the general presumption is that the possession followed the title into Richardson on February 1st, 1841.' (1) Whereas, such was a charge in respect to the facts, particularly in the following statement and conclusions stated therein : (a) He stated as a fact, 'The sale of this land was to Wm. E. Richardson. He purchased the property at that sale in 1840.' (b) He states as a fact, 'In 1841, the sheriff's deed was delivered to Wm. E. Richardson.' (c) He concludes as a fact that Richardson was in actual possession by saying, 'The

general presumption is that possession follows the title, then
the general presumption is that the possession followed the
title into Richardson, February 1st, 1841.'   (2) And his.
Honor erred in concluding from such facts that 'he' (Rich-
ardson) 'owned whatever right, title or interest that Garrett
had in that land.'   (3) His Honor erred in that he thus
ignored, took from the consideration of the jury the import-
ant issue of fact, and decided as matter of fact that Richard-
son acquired the title to the land, against the proof offered by
plaintiffs of the statement in the sheriff's receipt, 'titles to be
made when required,' followed by the continued possession
of Garrett, followed by the account presented by Richardson
to Garrett, wherein the former charged the latter with the
amount of the bid, such being found in Garrett's trunk after
his death, followed by a receipt by Richardson to Garrett of
'all demands in full,' which testimony was thus ignored
solely by reason of a rent contract signed by a stranger, being
the declaration of a stranger showing a rental of only twenty
acres of land; therefore, incompetent, no actual possession
having been shown thereunder.   (4) And whereas, his
Honor so charged the facts, and erroneously rested his con-
clusion of facts on the mistaken assumption that the lease
signed by Stephen Pritchard on February 1st, 1841 (page
99 of former brief), was a part of the 508 acres of land in
controversy, when in fact it was not a part of it, but was a
part of the 200 acres of the 700 acres sold by the sheriff, said
sheriff's receipt describing the whole land as 700 acres, it
being made to appear by said sheriff's receipt, dated Novem-
ber 9th, 1840, that he had sold 700 acres on which Ann
Nichols and Stephen Pritchard lived, but in the plat dated.
March, 1840, it appears the 508 acres adjoined other lands
of Thomas Garrett, and in the Stephen Pritchard rent paper
itself, the twenty acres therein included is described as 'im-
mediately adjoining Thomas Garrett's plantation on Poco-
taligo swamp,' showing that the twenty acres must have been
separate from and not a part of the land in question; and if
not so, it certainly was only a rental of only a part of the 508

acres, and in no wise affects the title to the remainder of the land in question.

"4. Because his Honor erred in charging : 'Gentlemen, that paper has been read to you. It is exhibit Q, on page 100 of the brief, in the case of James Hodge *v.* Thomas Garrett, *fi. fa.* One tract of 700 acres of land on Pocotaligo swamp, whereon Ann Nichols and Stephen Pritchard now live. 1840, November 9th, received of Wm. E. Richardson $353, in full for his bid for the above stated tract of land, titles to be made when required. That receipt is dated November 9th, 1840. February 1st, 1841, on page 99 of the brief, is a receipt or acknowledgment of Stephen Pritchard, and put in evidence, that he is the tenant of Wm. E. Richardson. That receipt means just what it says. I can't explain it any further. On February 1st, 1841, Stephen Pritchard, a receipt to W. E. Richardson acknowledging that he is his tenant. I can't explain that any more than just what it says.' (1) Whereas, his Honor simply read this sheriff's receipt, and made no charge as to the legal effect of the statement, contained therein, 'titles to be made when required,' as rebutting or tending to rebut the presumption that a deed was ever delivered to Wm. E. Richardson, or which his Honor should have charged prevented any such presumption from arising in the case; but to overcome such position contended for by plaintiffs before his Honor and the jury, he erroneously proceeds to call to the attention of the jury the rent paper whereby Stephen Pritchard acknowledges that he is the tenant of Wm. E. Richardson, which his Honor says means what it says; thereby virtually charging as a fact that Pritchard was in possession under Thos. Garrett, and that Pritchard was in possession of the whole of the land; no such entry of the whole or part having been offered in evidence; thereby charging in respect to the facts and deciding a question of fact which should have been left for the jury to determine, repeating and emphasizing this conclusion of fact for the third time in his charge.

"5. Because, when requested by plaintiffs' counsel to

charge the law in reference to the account made out by William E. Richardson against Thos. Garrett in 1842, wherein he charged Thos. Garrett with the bid paid for the land and interest thereon from 3d day of November, 1840, his Honor erroneously declines or fails to do so. Having charged so forcibly as a proposition of law that possession follows the title, and, therefore, that possession followed the title into Richardson under the rent paper of Pritchard on February 1st, 1841, it would have been eminently proper and fair to plaintiffs to charge the law with reference to this acknowledgment of Richardson, subsequent in date to the rent paper to the effect, that if the jury should find that said account was evidence of, or tended to prove an agreement on the part of Richardson that he bid off the land for Thos. Garrett, and if such fact was established, that then Richardson could not claim a debt against Thos. Garrett for the purchase money paid by him, and at same time hold absolute title to the property, but that in that case the most he could claim would be an equitable mortgage over it, the legal title remaining in Thomas Garrett; and further, in reference to the receipt of 1849, that if the jury should find that the amount of this bid was fully refunded by Thomas Garrett, that in that case the legal title, unencumbered by the amount of the bid, remained in him; and in this connection it was the duty of his Honor in declaring the law to charge that it was necessary for the fee or title to be in some person, and that the returns of *nulla bona* could not prevent its remaining in Thos. Garrett, even if they should find that he held it secretly and under cover.

"XI. The charge as to adverse possession, and in respect to matters of fact. 1. Because his Honor erred in that he modified plaintiffs' 5th request to charge in regard to adverse possession of Thomas Garrett by saying: 'That is correct. I am required to take up these requests to charge as to adverse possession, that will hereafter be explained.' (1) Whereas, the jury may have applied his subsequent charges thereon to the adverse possession of the defendants and their grantors,

without any charge being made upon the disabilities of the plaintiffs, the same being a fatal error in the charge.

"2. Because his Honor erred in charging defendants' tenth request to charge, viz: 'The jury must say whether or not a person could have been openly or notoriously and continuously in the adverse possession of land, if the jury find that there were judgments open against such person and executions at all times during that period being returned as *nulla bona* against him, there being no homestead exemptions in his favor,' and in adding, 'that is correct, you take those facts and all other facts in the case in reaching your conclusion.' (1) Whereas, such was a charge in respect to matters of fact. (2) Whereas, his Honor failed to properly qualify this charge by charging that adverse possession would have nothing to do with the case, if the jury should find that both parties derived their title from a common source. (3) And whereas, if it be held that it was proper for him to charge that 'if the jury should find that there were judgments against such person and executions at all times during that period returned as *nulla bona* against him,' &c., and to charge: 'You take those facts and all other facts, etc.,' then it was eminently proper and his duty in declaring the law applicable to such adverse possession, that if the jury should, however, find that from 1860 to 1871, a period of more than ten years, no *nulla bona* returns were entered against such person, and if the jury should find that such person, succeeded by his heir at law after his death, continued during this period to hold open and notorious adverse possession of the land, that this would have created a title by adverse possession in the ancestor and heir at law against such judgments, *nulla bona* returns and against the world, and further that such possession by an heir at law would inure to the benefit of all the other heirs at law until after their ouster was shown.

"3. Because his Honor erred in charging upon defendants' 12th request to charge as follows: 'If it is found by the jury that executions were returned *nulla bona* from time to

time, if during such periods one against whom such executions were returned *nulla bona* claims to be holding lands subject to levy and sale under such executions openly and notoriously and adversely to the world, the jury must say whether such claim is made out or not.' 'Those are matters of testimony; that being testimony in the case, you are to consider it along with other facts in the case, giving it such weight as you think it is entitled to.' (1) Whereas, such was clearly a charge in respect to matters of fact. (2) Whereas, such was an assumption that there were such facts in the case, and that such *nulla bona* returns were made from time to time during the whole period during which it was attempted to prove title by adverse possession in this case. (3) And whereas, such charge was misleading as to the facts, for it appears that no *nulla bona* returns were made for a period of over ten years from 1860 to 1871, long enough to complete title by adverse possession in Thomas Garrett, succeeded by his heirs at law after his death. (4) And whereas, by reason of such adverse possession having been continued by the defendants, and those under whom they claim, such title by adverse possession has fully matured, and his Honor erred in that he failed on this point to properly charge the jury.

"4. Because his Honor erred in charging defendants' 15th request to charge, viz: 'Adverse possession is not presumed to continue after it has been shown to exist; the adverse possession must be continuous, and must be shown to be such at all times during the continuance thereof.' (1) Whereas, under the evidence in this case, such charge was incorrect and misleading, in that after plaintiffs offered proof that Thomas Garrett's adverse possession was begun in 1829, the defendants offered proof that it was broken by sale of the land to Richardson in 1840, and although plaintiffs offered abundant proof that the adverse possession of Thomas Garrett continued from 1840 to day of his death, and by his widow after his death to 1871, a period of thirty-one years from 1840, yet under this charge this period of adverse hold-

ing was excluded from the consideration of the jury, if they concluded that there was a break in Thomas Garrett's adverse possession, if, indeed, such a break was left to the jury to determine, for his Honor elsewhere charged that both the title and the possession passed into Richardson in 1840 and 1841, respectively. (2) And whereas, such impression made that if the possession be broken and a re-entry made, that the jury not only have no right to tack the first and the latter holdings, but that such break in the holding destroys the right ever afterwards by any re-entry to hold for the required period, but that the adverse possession must date from the first entry, by his comments upon said request to charge, as follows: 'That is correct, and I so charge you. It takes twenty years possession, adverse possession, open and notorious, to make good a title by adverse possession; and further, it must be continuous; if it is not continuous, but is broken before the twenty years is out, and another party gets into possession and holds it, and the party out of possession re-enters possession, you can't tack that former and subsequent possession together. There is a break in the holding, and there must not be any break in the continuous holding for twenty years, to make good this adverse possession.' (3) And his Honor erred in that he failed to modify and explain to the jury, that while under the common law it requires twenty years to make out a title by adverse possession, that under the statute law of this State between 1824 and 1870, adverse possession in a single occupant for ten years would have completed a title by adverse possession; and that the adverse holdings of the ancestor and heir at law might be tacked together to make up such ten years; which charge would have been particularly applicable under the evidence in this case, the last return of *nulla bona* having been entered in 1860, the evidence offered to overcome the testimony of witnesses of the neighborhood offered on behalf of plaintiffs to show such adverse possession of Thos. Garrett, and his widow after his death, to date of her deed in 1871, being a period of eleven years. (4) And whereas, his Honor

12—59

should have further charged that if the break in the possession be occasioned by the death of the ancestor, and the possession be continued by his heir at law, that these possessions might be tacked to make up the period of either the ten or the twenty years; and that the possession of any grantee of such heir at law succeeding in the possession may also be tacked therewith to make good the title by adverse possession of twenty years begun by the ancestor.

"5. Because his Honor erred in charging defendants' 8th request to charge, viz: 'To enable the plaintiffs to make a title in their ancestor, Thomas Garrett, by adverse possession, it is necessary for them to prove that the land had been granted by the State by grant actual or presumed, or they must prove that the land had been held adversely for twenty years, which holding would presume a grant, such holding to have been open, notorious, continuous and adverse to all the world.' (1) Whereas, his Honor should have held and should have charged in reference to plaintiffs' right to recover a title by adverse possession, that while the above proposition was correct under the common law, that in this State under our statute it was only necessary to prove unbroken adverse possession for ten years, and that if such possession begun by the ancestor be broken by his death, and the possession thus begun be continued after his death by his heir at law, the two holdings might be tacked to make up the required period of ten years; such qualifications would have been peculiarly proper under the facts and law of this case. (2) And his Honor so erred in repeating defendants' 9th and 9th a requests to charge, and in his comments at the close of defendants' 13th request to charge. (3) That in declaring the law upon these points, his Honor should have charged that if the jury should find that Thomas Garrett was in possession of this land at the time of his death, and that his wife, Elizabeth, succeeded him in the possession as his heir at law, and that her grantees, E. W. Moise and the defendants under him, continued such possession for the period of ten or twenty years before the commencement of

this action, that such possession ripened the title of Thomas Garrett both in the plaintiffs and the defendants against the world.

"6. Because his Honor erred in charging defendants' 13th request to charge, viz : 'Where a person claims to have obtained title to real estate by or through an adverse open holding thereof, and where in proof of such claim he shows that he was in possession of the land, but holding secretly or under cover of some one else, such holding will not, under the law, be held to be adverse and open, and the jury must determine, in considering a question of this character, whether the claimant was involved with judgments open against him and executions being returned *nulla bona.'.* (1) Whereas, such was a charge in respect to matters of fact, and in violation of art. V., sec. 26, of the State Constitution. (2) His Honor erred in further charging, 'Of course, you are to consider all those questions of testimony and give them such force and effect as I have explained to you,' the same being a charge in respect to matters of fact, in violation of the State Constitution.

"7. Because his Honor erred in charging defendants' 13th request to charge, viz : 'Where a person claims to have obtained title to real estate by or through an adverse or open holding thereof, and where in proof of such claim he shows that he was in possession of the land, but holding it secretly or under cover of some one else, such holding will not, under the law, be held to be adverse and open, and the jury must consider, in determining a question of this character, whether the claimant was involved with judgments against him and executions being returned *nulla bona.* (1) Whereas, there was no such testimony showing such secret holding of the land, and it was error to charge in reference thereto.

"XII. The charge as to common source of title.  1. Because his Honor erred in charging at the close of plaintiffs' eighth and last request to charge, 'All of these charges will be explained in my general remarks;' and in

charging in his general remarks as to common source of title,
'Now, as to showing title by common source, it is not suffi-
cient for the plaintiffs to allege that they both claim from a
common source. When a person who is a defendant in an
action says that he claims his title from a person whom the
plaintiff says that he also claims title from, that is a common
source. When the defendant alleges in his answer, or ad-
mits the allegations of the plaintiff tending to show that
parties, plaintiffs and defendants, claim from a common
source, that would be an admission of common source. So
the plaintiffs may show by testimony that the parties claim
from a common source. When that is shown, the question
then is who has the better title. You don't have to go beyond
the common source. It must first be shown that the parties
claim from a common source, because the plaintiffs cannot
compel the defendant to admit that he claims from a com-
mon source, because it may be that the defendant does not
claim from a common source. The burden is upon the plain-
tiffs to show that they claim from a common source.' (1)
Whereas, such further explanation so modified plaintiffs'
6th request to charge as to change the word *derive* to the
word *claim,* title from a common source, the same being
detrimental to the rights of the plaintiffs under the evidence
in this case. (2) And in undertaking to specify the various
ways, common source may be shown, his Honor cites ways
not contended for by plaintiffs and unsupported by any evi-
dence offered, and omits to cite or specify ways of showing
source pertinent to the evidence offered, viz: (a) derivation
of title by inheritance (and subsequently conveyed to others)
from the same source from whom the other party claims by
inheritance. (b) Also, by proving the declaration of the
grantors under whom the party defendant claims, in the
absence of a title deed, as indicating the character and source
of their possession and title, before parting with their pos-
session and title, and by which their subsequent privies in
deeds would be bound, where such declarations show a claim
of title and possession from the same source from whom the

plaintiffs derive their title.    (3) And whereas, he erred in
such modification and general charge in limiting the proof of
common source to proof of admissions by the parties them-
selves.    (4) In stressing in his conclusion of this subject
the idea as already impressed upon the jury, that the only
way common source could be shown was by such proof of
admissions in one way or another, by stating: 'It must first
be shown that the parties claim from a common source, be-
cause the plaintiffs cannot compel the defendant to admit
that he claims from a common source, because it may be that
the defendant does not claim from a common source.'    (5).
And whereas, his Honor erred in that he failed to state in
said general remarks that when common source is shown,
the *only* or *sole* question then would be who has the better
title to the interest claimed by plaintiffs; and by such omis-
sion, having stated that he would further explain plaintiffs'
6th request to charge, his Honor thus destroyed the force
and effect thereof, and by this charge, even if the jury should
find that common source was shown, his Honor still left the
question of title in Thomas Garrett to be determined by
them..    (6) And whereas, the presentation of the question
as charged, viz: 'The question then is, who has the better
title,' instead of, who has the better title to the interest
claimed by plaintiffs, was calculated to mislead and confuse
the jury, in that the plaintiffs claim that they have an equal
interest with the defendants, each owning one-half of the
land, and, therefore, no better title to the whole of the land.

"2. Because his Honor erred in charging without modifi-
cation defendants' second request to charge, that 'It matters
not how weak the title of the defendants may seem, he has
the right to hold the possession against the world until some
one comes with the true title.'    (1) Whereas, his Honor
should have charged, and it is eminently proper under the
evidence in this case to except, that in case the plaintiffs and
defendants derived title from a common source, in that case
this principle would not apply; and that in case common
source was shown, *only one question* need be considered by

the jury, namely, who has the better title to the interest claimed by the plaintiffs, the plaintiffs or the defendants?

"3. Because his Honor erred in charging, 'The plaintiffs may prove his title by showing that he and the defendants claim from a common source, and when that is the case, when both run their titles back to some individual or individuals, the common grantor or common source of title, then the question is, which has the better title.'    (1) Whereas, instead of charging, 'when both run their titles back to some individual,' his Honor should have charged, when both titles are traced back to some individual, as such may be traced by the plaintiffs alone.    (2) And whereas, instead of charging, 'then the question is, which has the better title,' his Honor should have said, 'then the *sole* question is, who has the better title,' the same being a fatal error in his charge.

"4. Because in charging that he 'thought' plaintiffs' 7th request was correct, viz : 'If the jury find that Mrs. Elizabeth Moore conveyed the land in dispute to E. W. Moise, and that the defendants derived their title through him, and that at the time of such conveyance she was in possession under Thomas Garrett as one of his heirs at law, and that the plaintiffs are also heirs at law of Thomas Garrett, then they must find for the plaintiffs, unless the defendants have shown an independent title in themselves by connecting themselves with a grant from the State, or proving that which presumes a grant,' and in charging defendants' 6th request to charge, viz : 'A defendant can stand upon his possession against all the world except the true owner, and if the jury find that the title to the land was either not in Thomas Garrett or that it had passed out of him before his death, then the plaintiffs are not entitled to recover, even though the defendants have not proven title in themselves;' and in adding, 'that is correct, with some slight modification, to which I will refer later.'    (1) Whereas, the two charges are incompatible with and contrary to each other, and in charging defendants' 6th request, after presenting plaintiff's 7th request, it had the effect to destroy the effect of plaintiffs' 7th request.    (2)

And whereas, his Honor never afterwards made any slight modifications or any modification at all of defendants' 6th request. (3) And whereas, his Honor should have modified defendants' 6th request, that the principle that the defendant can stand upon his possession against all the world except the true owner, does not apply as between tenants in common deriving their title from a common ancestor, and under the complaint and issue joined and under the evidence in this case, such failure was a fatal error. (4) And whereas, his Honor should have further modified by charging that in case the jury should find that both parties derived their title from Thomas Garrett as a common source, that then it would make no difference whether he was true owner, or whether he ever had the title, or whether the same had passed out of him, the parties would be bound by the common source; and the only question in that case for the jury to determine would be who has the better title to the interest claimed by the plaintiffs, the plaintiffs or the defendants, and his failure so to charge was fatal to the rights of the plaintiffs. (5) And whereas, plaintiffs' right to recover on showing common source was positively denied by such charge, in that he charged that if the jury found that the title had passed out of Thomas Garrett before his death, whom the plaintiffs claim was the common source in this case, that then the plaintiffs could under no conditions recover, even though the defendants prove no title in themselves; and such impression was never afterwards corrected by his Honor, the same being a fatal error.

"5. Because when plaintiffs called to his Honor's attention the matter of the declarations of the grantors under whom defendants derived their title, and prior to the making of the deed to them, stating: 'Your Honor fully charged as to matters of common source, but your Honor said nothing as to the effect of the proof of the declaration of the parties prior to making of their deed,' intending to have his Honor to charge the law in reference thereto, his Honor simply said, 'I can only say, it would be improper for me to comment on

the facts, I can say it was admissible to go to the jury, it is for them.' (1) Whereas, his Honor erred in not perceiving that it was not the object of counsel to have him charge in respect to matters of fact, but to have him charge the law in reference to such proof, and to have him extend his charge already made upon the modes of proving title by common source to such mode. (2) And whereas, his Honor erred in not charging that if they found that such declarations were made by Elizabeth Moore before making the deed to E. W. Moise and if they proved that she derived her title from Thomas Garrett as her ancestor, and that the defendants derived their title through her, that the plaintiffs also claim as heirs at law of Thomas Garrett, that then in the absence of any deed in her showing a contrary holding, the defendants would be bound as privies under her by such declarations, and that common source might in this way be made out; and if so, the only question to determine would be who has the better title to the interest claimed by the plaintiffs. (3) And whereas, having charged as to modes of proving title by common source as to which no evidence was offered, it was error for his Honor not to have charged at this point or at some proper place in his charge, as to this mode of proving title by common source, upon which much undisputed proof had been offered.

"XIII. The charge in reference to the deed of Jno. and Elizabeth Moore to E. W. Moise. 1. Because his Honor erred in charging the jury that: 'Now in regard to the deed from Jno. S. and Elizabeth Moore to E. W. Moise in 1871, it is my duty to tell you, to construe those papers * * * that it is an absolute deed on its face, and according to its terms J. S. and Elizabeth Moore represented that they were the absolute owners in fee (of) all the land (and) by that deed they conveyed it to E. W. Moise with warranty,' in that it was not his duty to make such construction of the paper, neither the legal meaning, force nor effect thereof being in question as to what estate was by its terms conveyed or intended to be conveyed. And such

charge, without qualification, had the effect of emphasizing the impression made upon the jury that the deed of itself determined that the grantors did not derive title from a common source with the plaintiffs. Whereas, he should have qualified by instructing the jury that no matter what the legal meaning, force and effect of the deed as between the parties thereto might be, the paper having been admitted as competent evidence tending to prove common source, it was for them to say whether or not such deed as a fact was a link in the chain of evidence to prove common source.

"2. Because his Honor erred in charging, as requested by the defendants' 20th request, 'That the deed of Jno. S. and Elizabeth Moore does not show or even tend to show common source of title;' and as requested by defendants' 21st request, that: 'This deed does not point to a common source of title;' whereas, the deed being introduced to prove, as a link in the chain of evidence, the collateral fact that the defendants derived whatever title the deed conveyed from a common source with the plaintiffs, and not to prove what title or estate the deed alone conveyed to E. W. Moise, his Honor should have charged that it was for the jury to say whether the deed, in connection with the other testimony on that point, tended as a fact to prove such common source; and he should not have construed the deed as to its legal force and effect of itself, certainly without so instructing the jury.

"3. Because his Honor erred in charging the jury that 'the deed of the Moores to E. W. Moise does not show or even tend to show common source of title.' (1) Whereas, the same was a charge in respect to matters of fact. (2) And whereas, the same had the effect to make the deed outweigh the testimony introduced by plaintiffs of the declarations of Mrs. Moore, showing the source of her title before she parted with the title and possession, as to which his Honor omitted to charge the law, and such omission being hurtful to the rights of plaintiffs. (3) And whereas, such charge had the effect to exclude from the consideration of the jury the declarations of Mrs. Moore prior to the making

of her deed, and her declarations as contained in the certificates at the foot of the deed and concurrent therewith, as tending to show the common source of title. (4) And whereas, the plaintiffs, moved by the belief that the Supreme Court in its former decision herein, in construing the deed in itself, wherein the above conclusion was stated, and further, that 'they' (the plaintiffs) 'claimed under Thomas Garrett, whose name is not mentioned or in any way alluded to in that deed,' overlooked the certificate on the plat, which by accident was two pages removed from the plat itself, in the former printed brief herein, but which was made a part of the deed, wherein it is certified by Richard W. Harvin, surveyor, as follows: 'Pursuant to the request of Thomas Garrett, I have admeasured and laid out unto him a plantation,' etc., plaintiffs respectfully submit that the charges that the deed did not 'point to' or 'even tend to show' common source of title, was error. (5) And whereas, his Honor should have modified by charging that it was for the jury to determine whether by such deed, together with other facts in the case, common source of title was made out. (6) And whereas, his Honor should have further modified by charging that if the jury found that the deed was made by one of the heirs at law of a common ancestor, and conveyed by its terms the whole of the common property, while under the decision of the Supreme Court it would operate as an ouster as against all the other tenants in common, provided they were under no disabilities, yet it would, in fact, cause the grantee under such deed to become the tenant in common with the other heirs at law, as much so as if it had conveyed the undivided interest of such heir at law executing the same.

"4. Because in charging that 'the certificates of inheritance and of renunciation of dower as attached to this deed, in the words of the Supreme Court, cannot have the effect of contradicting the plain and express words of the deed,' his Honor erred in assuming that they were introduced for that purpose, and erred in that he failed to qualify, that while

they did not have the effect to contradict the deed, yet they were entitled to be considered by the jury as facts in the case.

"5. Because his Honor erred in charging defendants' 17th request to charge, 'That the certificates on the deed of Jno. S. and Elizabeth Moore to E. W. Moise cannot have the effect of contradicting the plain and express words of the deed,' which, without qualification, had the effect to eliminate such certificates from the consideration of the jury, he having charged the jury at same time that the deed did not show or tend to show common source of title. Whereas, he should have qualified this charge by instructing the jury that such certificates having been received as competent testimony as links in the chain of evidence to prove the common source of title, that it was for them to say whether or not such certificates as facts tended to prove such common source of title.

"6. Because his Honor erred in charging defendants' 18th request, 'That the deed conveyed the body of land therein conveyed as a whole in fee simple;' and defendants' 19th request, that 'The force and effect of a deed of real estate must be determined by the language of the deed itself, and cannot be effected by the recitations contained in any of the releases attached to the deed,' without qualifying by instructing the jury that it was for them to say whether the paper containing the deed and such recitations contained in the releases did or did not tend to show as a link in the chain of evidence, common source of title, knowing that the paper was introduced for that purpose.

"7. Because in charging, 'In regard to the deed from John S. and Elizabeth Moore to E. W. Moise, in 1871, it is my duty to tell you, to construe those papers;' and in charging as to the effect of the certificates of renunciation of dower and of inheritance, his Honor erred in that he failed to declare the law fully in reference thereto, by not instructing the jury that they were entitled to be considered by them as competent evidence in determining the question of common source of title.

"8. Because his Honor erred in charging, without further

explanation, defendants' 17th request to charge, viz: "The certificates on the deed of John S. and Elizabeth Moore to E. W. Moise cannot have the effect of contradicting the plain and express words of the deed.' Whereas, the paper as a whole, consisting of the deed, the plat and the certificates of renunciation of inheritance and of dower indorsed thereon, being introduced in evidence to prove, as a link in the chain of evidence, the collateral fact that the defendants derived whatever title they had to the land from Thomas Garrett as a common source, such charge by his Honor had the effect to destroy or disparage the effect of such evidence, and to defeat such purpose of the plaintiffs.

"XV. Exceptions to the general charge.  1. Because, while charging at the close of plaintiffs' eighth and last request, that, 'All these charges will be further explained in my general remarks,' his Honor erred in that he did not explain all of them in his general remarks, but failed to further explain plaintiffs' 2d, 3d, 4th, 6th, 7th and 8th requests; but in his general remarks he charged in regard to other matters. not embraced in these requests, the jury being led thereby to believe that these points were embodied in his general remarks, and thereby destroyed the effect of these requests to charge.

"2. Because his Honor erred in charging at the close of plaintiffs' eighth and last request, 'All of these charges will be further explained in my general remarks,' and in charging in his general remarks beginning, 'Now, gentlemen, I have explained to you that plaintiffs must make out their case.   If the plaintiffs have made out a title by adverse possession, as alleged in their complaint, they would have made out their case.   I have explained to you what adverse possession was, that is a question of fact; if the plaintiffs have shown it by the preponderance of the testimony, the burden of proof is upon them,' and then proceeds with the charge upon common source, the only other matter charged in his general remarks. (1) Whereas, his Honor erred in stating to the jury that the plaintiffs claimed title by adverse possession in their com-

plaint. The complaint makes no such allegation, and this was a charge in respect to the facts to this extent. (2) And whereas, it excluded from the consideration of the jury the question whether the plaintiffs and defendants, or those under whom they claim, were heirs of Thomas Garrett, and as such that the parties were estopped to deny that Thomas Garrett had the title at his death, without showing an independent title in themselves. (3) And whereas, it excluded from the consideration of the jury the question, if they found that Thomas Garrett purchased the land in 1829, and took and held possession of it thereunder until his death, and his widow and her grantees under her had continued to hold such possession, whether the defendants had shown that such title had passed out of Thomas Garrett, or whether the defendants had shown that they held the same by adverse possession, as it was proper for him to do under plaintiffs' 4th request to charge as charged by him. (4) And whereas, it excluded from the consideration of the jury the question whether the true title remained in Thomas Garrett, if they should find that he purchased the land in 1829, and went into and continued in possession thereunder until his death, regardless of whether such possession was adverse or not, and regardless of the returns by the sheriff of *nulla bona,* this point being embraced under plaintiffs' 3d request.

"3. Because it was error for his Honor to charge, 'If the plaintiffs have made out their title by adverse possession, as alleged in their complaint, they would have made out their case,' and not to have charged with equal force immediately thereafter, in his charge upon the subject of common source of title, that if the plaintiffs have made out their title by showing common source of title, as alleged in their complaint, they would have made out their case, or some charge of equal force and emphasis, especially since the plaintiffs had offered strong and undisputed testimony to establish a common source of title.

"4. Because his Honor laid too great stress upon the law as to title by adverse possession and too little on the question

of plaintiffs' right to recover on common source of title throughout his charge.

"5. Because his Honor has laid too great stress throughout his charge upon the matter of proving title by adverse possession, but has failed to give any prominence to the proposition of law that Thomas Garrett, having obtained the legal title to the property in 1829, the occupation of such premises by Elizabeth Garrett and her grantees shall be deemed to have been under and in subordination to the legal title, unless it appeared that such premises had been held and possessed adversely to such legal title for the period prescribed by the statute of limitations before the commencement of this action.

"6. Because his Honor has not only laid too great stress upon the law as to title by adverse possession, but at the same time signally failed anywhere to charge that the disabilities of the plaintiffs relieved them, the party out of possession during the continuance of such disabilities, from the adverse possession of the defendants, which he knew the Court had laid down as the decided law of this case.

"7. Because his Honor ignored the material and pertinent testimony on the point of the disabilities of the plaintiffs, as relieving them from the adverse possession set up by the defendants, in that he made no charge as to the law in reference thereto.

"8. Because his Honor misdirected the jury in that, while he charged fully upon the rule as to adverse possession, he failed to instruct the jury as to the disabilities of the plaintiffs, of which there was positive and uncontradicted proof, which were settled facts in the case, by such proof by the agreement of counsel concerning the same and by the former decision of the Supreme Court on this point.

"9. Because the whole charge of his Honor, taken together, emphasized the matter and character of adverse possession too much, and to the disparagement before the jury of the other points and issues.

"9a. Because the whole charge gave undue prominence to

the fact of the *nulla bona* returns, and made no reference to any of the testimony of an opposing tendency.

"10. Because the whole charge of his Honor was calculated to impress the jury with the matter of adverse possession as the controlling point in the case, and the charge as a whole disclosed to the jury the mind of the Judge, that he considered the matter of adverse possession as the controlling point, and that he did not think that the rights of the plaintiffs had been established thereunder.

"11. Because his Honor erred in charging that: 'If the sheriff failed to make the money upon an execution in his hands, and could not find any property, real or personal, to levy upon, he should make his return of *nulla bona*,' and that those words meant, 'he could not find any property to levy upon;' whereas, he should have charged that such return meant simply he could find no personal property to levy upon.

"12. Because his Honor erred in that he stressed too much the facts appearing by the *nulla bona* returns, to the neglect of other facts tending to show a contrary fact.

"13. Because the charge as a whole, upon the subject of the deed of Jno. S. and Elizabeth Moore to E. W. Moise, and the certificates attached thereto, had the effect: (1) to defeat the purpose of the plaintiffs, that the deed might be shown to be a link in the chain of evidence to prove common source of title; and (2) to destroy the effect of the certificates of renunciation attached thereto, as evidence tending to show common source of title in the case.

"14. Because his Honor erred in that he charged several of plaintiffs' requests reservedly, if they be considered as charged at all, by saying as to the 3d, 5th and 6th, 'That is correct;' as to 7th, 'That is, I think, correct;' as to 8th, 'That is correct, it seems to be;' and as to all, 'All of these charges will be further explained in my general remarks;' but charged defendants' requests emphatically by such expressions as, 'That is correct, and I so charge you, gentlemen;' 'That is correct, and I so charge you;' 'and I charge you

that;' whereas, the same had the effect to disparage the rights and interest of the plaintiffs before the jury.

"15. Because his Honor should have declared as a part of the law applicable to this case, that if the jury should find that Thomas Garrett purchased the land in question on the 6th day of January, 1829, and took the sheriff's deed thereto, and took and held possession thereunder until his death, and that his widow continued such possession until the 6th day of January, 1869, a period of forty years, then they should find that the heirs at law of Thomas Garrett had a valid title to such land against the world."

Sec. 8, art. V., of the Constitution, is as follows: "When a judgment or decree is reversed or affirmed by the Supreme Court, every point made and distinctly stated in the cause, and fairly arising upon the record of the case, shall be considered and decided, and the reason thereof shall be concisely and briefly stated in writing, and preserved with the record of the case." It only requires a glance at the exceptions just mentioned to see that there has been a failure to comply with the provisions of the Constitution, requiring the points made by the appellants to be "distinctly stated," before they are entitled to have them considered by the Court. For this Court to undertake to formulate the exceptions, subdivisions, and branches of subdivisions, so as to state *distinctly* the points which the appellants claim arise upon the record of the case, would impose upon the Court a duty not contemplated by the Constitution, especially as the Supreme Court is required "to file their decision within sixty days from the last day of the Court at which the cases were heard." While this Court has considered the exceptions and decides that they cannot be sustained, it has not, on account of the facts just mentioned, stated its reasons in reaching said conclusion.

The sixteenth exception is as follows: "XVI. Modifying plaintiffs' requests to charge. I. Because his Honor erred in that he modified plaintiffs' fourth request to charge, by inserting the words, 'or claim same through him,' and in not

leaving the request exclusively applicable, to 'all and any person who succeeded him (Garrett) in the possession.'   2. (Withdrawn.)    3.  (Withdrawn.)    4.  (Withdrawn.)" This exception points out no specific error, and, therefore, will not be considered.

The seventeenth exception is as follows: "XVII. Motion for new trial.   1. Because his Honor erred in stating and holding in his order refusing the motion for new trial, that plaintiffs had 'moved for a new trial upon three grounds.' Whereas, his Honor erred in not stating that plaintiffs had moved upon five grounds, and his Honor erred in not considering and passing upon each separately.   2. Because his Honor erred in not sustaining plaintiffs' first ground in motion for new trial, viz: Because there having been a sale of the land to Thomas Garrett in 1829, and a deed delivered to him, as presumed in law, the fee continued in him until his death, the evidence on this point being wholly insufficient to sustain the verdict.   3. (Withdrawn.)   4. Because his Honor erred in not sustaining plaintiffs' third ground in motion for a new trial, to wit: that the Judge omitted to charge upon the disabilities of the plaintiffs as relieving them from the twenty years adverse possession, set up by defendants, such omission being fatal to the plaintiffs, as it left this defense as a perfect and effectual defense against the plaintiffs; whereas, proof of such disabilities was made and not contradicted.   5. Because his Honor erred in concluding in his order stating there being no sufficient evidence before me that the jury did misapply the law * * * that said motion be and the same is hereby refused.  (1) Whereas, his Honor should have held that there being not merely a probability arising from the affidavit of A. B. Stuckey, that jurors had applied the twenty years adverse possession to the holdings by the defendants and those under whom they claim, but that there being a possibility of such application of his charge to the possession by the defendants and those under whom they claim, and his omission to charge upon the disabilities of the plaintiffs, during that period or portion

13—59

thereof, that it was his duty to have granted a new trial. (2) (Withdrawn.)"

We will first consider subdivision I. of the said exceptions. The record shows that the presiding Judge ruled upon all the grounds of the motion for a new trial. There was, therefore, no error prejudicial to the rights of the appellants.

The second subdivision of said exception depended upon a question of fact, and as there was testimony tending to sustain the verdict of the jury, the ruling of the presiding Judge cannot be reviewed by this Court.

The third subdivision having been withdrawn, we proceed to a consideration of the fourth subdivision. The presiding Judge charged substantially the law applicable to the case, and if the appellant desired him to charge more specifically, requests should have been prepared to that effect. The first branch of subdivision five was dependent upon an affidavit which this Court has ruled to be incompetent as evidence. The second branch of said subdivision was withdrawn.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.

PETITION FOR REHEARING.—The Court is unable to discover that any material fact or principle of law has either been overlooked or disregarded, and hence there is no ground for a rehearing. It is, therefore, ordered, that the petition for a rehearing be dismssed, and that the stay of the remittitur heretofore granted be revoked.