## SENTERFEIT v. SHEALEY.

1. EVIDENCE.—A witness who says he knows the land in question may be asked if he knows the tract of land described in a deed in evidence, description being read as a part of the question, and what name known by.
2. EXCEPTION *too general.*

3. EVIDENCE—PARTITION.—Where the land in question is a part of estate lands partitioned by commissioners selected by the cotenants by deeds, and the title is traced through this partition, it is proper for a commissioner to testify as to the partition and who the commissioners were, and where the deed in question reserves a life interest to the widow, another cotenant may testify that the widow reserved a life estate in other tracts set apart to him and others.

4. IBID.—DEED—RECORD—LOST PAPER.—Where a deed is produced at trial on notice and an inspection of it shows that it has been mutilated and that a plat therein referred to, as a part of it, is missing, and the record of the deed, in the year of its execution, shows the missing portion, the record may be introduced to prove such portion.

5. IBID.—IBID.—Where the record of a deed is in question, a grantor can not testify when his mother, also a grantor, heard the deed was recorded; nor the purpose for which she came to the recorder's office; nor to his state of feelings when he first heard of the record; nor that he consented to the delivery of the deed; nor that he intended to deliver it.

6. IBID.—PARTITION—PAROL AGREEMENT.—Where a partition deed has been executed between cotenants, a parol agreement not expressed in the deed can not be proved.

7. LIMITATION OF ESTATES—LIMITATION OF ACTIONS—DEED.—JUDGE must construe deed and a quit claim partition deed signed by the widow and other children of a decedent, conveying to one child a fee simple title to a tract of land, "excepting a life claim in said land to * * * widow of said * * * deceased," properly construed to reserve a life estate to the widow, with remainder in fee simple to grantee, and no adverse possession can commence to run against grantee or his heirs until death of widow.

8. JUROR—RELATIONSHIP.—When a juror upon being asked if he is related to either party, says he does not know of any relationship, and after verdict, on motion for new trial, losing party shows that he is related, his relationship could not have affected him, and where due diligence is not shown before trial in ascertaining relationship, verdict will not be set aside.

Before F. B. GARY, special Judge, Lexington, November, 1903. Affirmed.

Action by H. B. and W. H. Senterfeit *et al.* against R. B. and Amanda Shealy *et al.* From Circuit judgment, defend-

ants appeal.   The deed referred to in exceptions 1 and 2, from which the description was read, was in evidence.   The deed construed by the Court, is as follows:

"Know all men by these presents, that we, Sarah Shealy, widow of Andrew Shealy, deceased; Melvin Shealy, Sarah Shealy, his wife; Jane A. Shealy, Amanda M. Shealy, Leathy E. Shealy, Marshal Shealy, Catherine, his wife, and Reedy Shealy, all legal heirs of Andrew Shealy, deceased, late of Lexington County, and State aforesaid, in consideration of four hundred dollars to us in hand paid by Henry Shealy, of the same place, the receipt whereof we do hereby fully acknowledge, have bargained, sold and quit claim, and by these presents do bargain, sell and quit claim unto the said Henry Shealy, and to his heirs and assigns forever, all of our, and each of our, rights, title, interest, estate, claim and demand, both at law and in equity, and as well in possession as in expectancy of, in and to all that certain farm or piece of land containing one hundred acres, situate in Lexington County, and State aforesaid, on the Pine Log Road, adjoining lands of James M. Jones, No. 4, estate of John Lowerman, deceased, and tract No. 6, and hath such representation as a plat of the same hereunto annexed, made by W. E. Sawyer, D. S., 26th January, 1877, will more fully represent, with all and singular the hereditaments and appurtenances thereunto belonging, excepting a lifetime claim in said land to Sarah Shealy, widow of said Andrew Shealy, deceased.

"In witness whereof, we have hereunto set our hands and seals, February 6th, A. D. 1877.

"Signed, sealed and delivered in the presence of J. M. Jones, W. E. Sawyer."   (Properly executed.)

*Messrs. E. F. Strother* and *G. T. Graham,* for appellants, cite: *Oral testimony as to contents of writing is incompetent:* 1 Green., 12 ed., sec. 463; 33 S. E., 2; Abbott's Trial Ev., 2 ed., 787.   *When secondary evidence of deed is admissible:* 1 Ency., 1 ed., 513, 514; 73 Ga., 25; 2 Cyc., 239, 240; 10 Wall., 26; 111 U. S., 722; 7 S. Ct., 155; 12

Rich., 391. *If recorded deed be mutilated, certified copy of record and not record should be offered after notice:* Code, 1902, 2896; 2 Bay., 525; 2 Bail., 296. *Evidence of purpose of widow in going to Lexington bears on delivery of deed:* 11 S. C., 56; 3 S. C., 330; 24 S. C., 597; 23 S. C., 31; 2 Hill, *410. *Error to rule out question of delivery:* Dud. Eq., 14; 11 S. C., 56; 24 S. C., 507; 3 S. C., 330; 3 McC., 275; 2 Hill, *410; 23 S. C., 91. *The excepting words in the deed does not create or convey a life estate in Sarah Shealy:* 24 S. E., 371; 5 S. C., 450; 2 Story Eq. Jur., secs. 1068-70; 2 Minor Inst., 246, 1082; 41 S. C., 298. *Delivery is not complete when it is mutually understood that the deed shall not become operative until some future event:* 7 S. C., 234; 11 S. C., 56; Dud. Eq., 14; 23 S. C., 91; 24 S. C., 597; 2 Hill Ch., 410; 3 McC., 275. *Possession is not conclusive evidence of delivery:* 16 S. C., 382; 1 Johns. Ch., 114.

*Messrs. B. W. Crouch, Efird & Dreher* and *E. L. Asbill,* contra. *Messrs. Efird & Dreher* cite: *Admission of irrelevant evidence is not reversible error unless prejudicial:* 50 S. C., 129; 60 S. C., 67. *Trial Judge decides if secondary evidence is admissible:* 43 S. C., 379. *Record is secondary evidence of lost deed recorded:* 49 S. C., 242. *Purpose of another in making a journey is hearsay:* 31 S. C., 378. *Parol agreement could not vary previous deed:* 60 S. C., 67. *Grantor may retain life estate and convey fee in remainder:* 59 S. C., 64. *Motion for new trial because of relation of juror not granted in absence of due diligence in ascertaining it:* Code, 1902, 2940, 2946; 55 S. C., 90.

March 31, 1905. The opinion of the Court was delivered by

MR. CHIEF JUSTICE POPE. On the 15th day of May, 1901, this action was commenced. Its object was to recover from the defendants a tract of land containing one hundred acres, situate in Lexington County, in the State aforesaid, which tract of land is more fully described in a plat made

thereof by W. E. Sawyer, deputy surveyor, known as tract No. 5 of the land belonging to the estate of Andrew Shealy, deceased, laid out January 26, 1877. Plaintiffs claim this land as arising from a partition of the lands of which Andrew Shealy died seized in 1873, and which said lands were partitioned amongst his seven children by three commissioners appointed by them. All parties being *sui juris,* deeds were signed to the tract so partitioned so that each one of the seven children received lands in kind, but a life estate in each tract was in said deeds reserved to Sarah Shealy, the widow of the said Andrew Shealy, deceased. The plaintiffs claim the tract so assigned in said partition to one Henry Shealy, who died in 1888, survived by his widow and one child. The child, an infant, died prior to the mother. The mother died being possessed of all the estate of her said husband, Henry Shealy, and his infant child. After her death a partition of said tract of land, containing one hundred acres, was made under the decree of the Court of Common Pleas for Lexington County, and at the sale ordered by said Court, the plaintiffs became the purchasers thereof. After the death of the life tenant, Sarah Shealy, in 1900, they demanded possession of said one hundred acres, which was not only refused, but they were ordered not to come upon said lands. Thereafter they brought their action as aforesaid against the three defendants, who have retained possession thereof since the death of their mother, Sarah Shealy, deceased, widow of Andrew Shealy, deceased.

The defendants set up three defenses. The first was a general denial of all the allegations of the plaintiffs' complaint; the second was that neither the plaintiffs, their ancestors nor predecessors, were seized or possessed of the premises described in the complaint within ten years before the commencement of this action, and that the defendants are the owners in fee of the said premises; and that they have held and possessed the said premises adversely to the pretended title of the plaintiffs for more than ten years, under a claim of title in fee, exclusive of any other right. And for

a third defense, that prior to this action, the defendants had been in the adverse, uninterrupted, peaceable possession of said premises for a period of ten years, claiming the same as their own, and these defendants plead such possession as a bar to this action under the statute.

The action came on for trial before special Judge, Hon. Frank B. Gary, and a jury. Full testimony was taken and a full and comprehensive charge to the jury from the said special Judge. The jury thereupon found for the plaintiffs the land in dispute. A motion was made for a new trial on the minutes of the Court, which was refused. Thereafter, on judgment being entered up for the plaintiffs, the defendants appealed to this Court. We will now undertake to pass upon these exceptions in their order.

"1. Because his Honor erred in allowing counsel for plaintiffs to read to the witness, Mabus, a description of the land in controversy from a deed, which counsel held in his hand, and to ask said witness whether he knew the land described in the said deed and what it was known as; the error being in counsel's telling the witness where the land was, instead of the witness telling the Court and jury where the land was and what he knew about it." Before the question objected to was asked, the witness had testified that he was sixty-five years old, that he knew Andrew Shealy and his children, and he lived not over two miles from him, and that he knew the Shealy lands tolerably well. We do not see that there was any serious objection to the mode adopted in obtaining the testimony of this witness touching the identity of the particular tract here sought for. Of course, this identification had to be made before the Court and jury, and his Honor, in permitting the question, stated that he knew no better way for the witness to indicate what the tract of land was, how located, etc., unless by pursuing the plan adopted; nor do we see that there was any ground in this matter to reverse the judgment. There was other and full testimony in regard to this tract of land. It happened to be the home tract of Andrew Shealy, deceased,

where the children were brought up, some of whom have never left the place since their brith.    Therefore, we overrule this exception.

"II. Because his Honor erred in allowing counsel for plaintiffs to propound to the witness, Mabus, the following question and allowing said witness to answer same: 'Q. Now, Mr. Mabus, I will read you the description of another piece of land and ask you if you know that. (Description read to witness.)    A. No, sir.    Q. This is the same description I read to you; covers the same land?    A. Yes, sir.'    The appellants fail to indicate to this Court what their ground of objection to this question really is, and we will ask to be excused from involving ourselves in the difficulty of ascertaining exactly what the exception to the testimony is ; and for the present we will overrule the exception because it is too general.

"III. Because his Honor erred in allowing the witness, Reynolds, to testify that the land of Andrew Shealy, deceased, had been divided, and that he and two others were the commissioners who had divided said land among the children of said Andrew Shealy, when it is respectfully submitted that the division of Andrew Shealy's lands was irrelevant to the matter in issue in this case."    We cannot take this view of the matter.    If anything, we think the presiding Judge held the plaintiffs to too narrow a compass.    Not only did this witness testify to the division, but two of the defendants did likewise.    Truth is the great aim of investigation in Courts.    The best manner that can be adopted to elicit the truth is always to be aimed at.    The deed and the plat show that this tract of one hundred acres now sued for was tract No. 5 in the partition of Andrew Shealy's, deceased, lands.    As before remarked, the partition was not made under proceedings from a Court or in a Court, but, all parties being of full age, consented to these three neighbors as commissioners, making the partition.    We cannot see that any mistake was made by the presiding Judge in this particular, especially in view of the

quantity of testimony given by other witnesses and some of them parties to the cause. This exception is overruled.

"IV. For that his Honor erred in admitting in evidence the record book of the clerk's office, which contained a record purporting to be a deed from Sarah Shealy and others to Henry Shealy, when the original deed was delivered to plaintiffs 'counsel in open Court, pursuant to notice, and there was no competent proof that said deed was mutilated or that any part of it was lost." Certain it is that the plat, to which direct reference is made in the deed itself as being a part of said deed of conveyance to Henry Shealy, was not attached to said original deed when it was brought into Court under notice. However, such plat was recorded with the deed in the clerk's office amongst the records of 1877, the year in which it was executed. Carrying out the view suggested by the appellant, it would seem that the jury would have been denied the pleasure and profit of the inspection of this plat if their views had prevailed. There were palpable evidences of a mutilation of the original deed when produced in Court. How else could the changes that had been wrought in the body of the deed itself been brought to light than by a comparison of said original deed with the record from the office of the register of mesne conveyance, which purported to be a copy of the said deed, made in the very year of its execution? We must overrule this exception.

"V. Because his Honor erred in admitting in evidence the record of the clerk's office, which contained the record of a paper purporting to be a deed from Sarah Shealy and others to Henry Shealy, when the original deed had been produced, and in holding that the notice which was served on defendants had nothing to do with the copy to be introduced, and that plaintiff could put up the next best evidence, when it is respectfully submitted that if the original had not been produced or if it had been produced, there had been no proof to show it had been mutilated, then a certified copy alone could have been admitted in evidence, and not the record

book from the clerk's office, and his Honor erred as matter of law in not so holding.

"VI. Because his Honor erred in holding, 'Gentlemen, I hold he has the right to introduce this record for the purpose of proving that portion of the record which does not appear in the deed. I think the fact it is on record is certainly some evidence it was at one time in existence. Of course, the original is the highest evidence, and as far as it goes it ought to be used rather than the record.' The error being in his Honor holding that the fact that this deed had been placed on record was sufficient to show that the deed had been mutilated."

The fact of the mutilation of the deed was a matter of evidence furnished by the paper itself. This condition spoke louder than words of the mutilation. His Honor so found, and it was while being governed by this mutilated condition of the deed that he made the remarks attributed to him in these two exceptions. We do not ourselves see how any better evidence could have been furnished of the mutilation of the deed than by the comparison of such mutilated deed with a copy of said deed as entered on the records of the office of the register of mesne conveyances for Lexington County in the very year of the execution of the deed. Of course, other testimony might have been introduced if it had been obtainable, but there was no allegation that such evidence was obtainable. The courts of justice, in reaching out after a proper remedy by which you may lay bare the mutilation of an original deed, must have resort to practical methods. These two exceptions are overruled.

"VII. For that his Honor erred in admitting in evidence the record of a paper which purported to be a plat of the land in controversy, when there was not a particle of proof to show that the original plat was not in existence, and in the absence of any notice to the defendant that plaintiffs would use the record, or certified copy of such plat, and in holding

that in the absence of any proof the presumption was that the plat was lost or destroyed."

The plat in controversy was referred to in the deed itself and as a part of said deed. When this deed was produced on notice to the defendants the plat was conspicuously absent, but the record in the mesne conveyance office showed that it was recorded along with the deed in the year 1877. It was held in the *State* v. *Crocker*, 49 S. C., 242, 248, 27 S. E., 49, that "it thus appears that one of the modes of proving a record is by the production of the record itself." This is the view we take of the exigencies of the case at bar, and, therefore, we overrule this exception.

We will now consider the eighth, ninth, tenth, eleventh, twelfth and thirteenth exceptions, relating as they do to the witness, R. B. Shealy.

"VIII. For that his Honor erred in not allowing the defendant, R. B. Shealy, to testify when his mother, Sarah Shealy, first heard that the deed from Sarah Shealy and others to Henry Shealy for the land in controversy was on record, and in not allowing him to testify when his mother first knew that said deed was on record, when the recording of said deed was a most material question at issue in said case.

"IX. Because his Honor erred in refusing to allow R. B. Shealy to testify for what purpose his mother came to Lexington about one year before she died.

"X. Because his Honor erred in refusing to allow R. B. Shealy to testify as to the state of his feelings when he first heard that the deed from Sarah Shealy and others to Henry Shealy had been placed on record.

"XI. For that his Honor erred in ruling out the following question, which was propounded to R. B. Shealy: 'Did you consent for the delivery of this deed to anybody?' when the question of the delivery of this deed was one of the principal issues in the case.

"XII. For that his Honor erred in allowing the witness, R. B. Shealy, to testify all about the division of Andrew

Shealy's estate, which was a collateral matter and irrelevant to the matter at issue in said case.

"XIII. Because his Honor erred in allowing R. B. Shealy to testify on recross-examination against objection that he thought his mother reserved an interest in other tracts of land, the same not being in reply to any new matter brought out by defendant in their examination of said witness in reply, and was wholly irrelevant to the matter in issue."

We see no practical importance growing out of when the old mother, Mrs. Sarah Shealy, first heard that her deed and others with her was on record. It was purely hearsay, nor could R. B. Shealy testify for what purpose his mother came to Lexington the year before she died, nor was there any error in refusing R. B. Shealy's testimony as to his state of feeling when he first heard that this deed was on record; nor as to whether he consented to the delivery of the deed to anybody. We do not think his Honor erred in allowing this witness to testify all about the division of Andrew Shealy's estate. He was a party to it, signed the deed, and on his cross-examination it is perfectly legitimate for R. B. Shealy to testify that he thought his mother reserved an interest in the other tracts of land. These exceptions are, therefore, overruled.

"XIV. For that his Honor erred in not allowing Amanda Shealy to testify that she never intended to deliver the deed from Sarah Shealy and others to Henry Shealy unto the said Henry Shealy; the question of the delivery of said deed being the most material issue in the case.

"XV. Because his Honor erred in not allowing Amanda Shealy to testify that her mother did not know that the deed from Sarah Shealy and others to Henry Shealy was on record, and holding that her testimony on that point would be hearsay.

"XVI. Because his Honor erred in refusing to allow Amanda Shealy to testify in reply as to an agreement be-

tween herself, her mother, brothers, sisters and Henry Shealy, about Henry Shealy's interest in the lands of Andrew Shealy, deceased, when counsel for plaintiff brought out of her on cross-examination that Henry Shealy would have received the property in controvery had he complied with the agreement; the more especially because counsel for plaintiff were trying to show to the jury that the defendants were trying to cheat Henry Shealy out of his interest in Andrew Shealy's estate."

We do not see that his Honor made any error when he refused to allow Amanda Shealy to testify as to what these three exceptions set forth. She had signed the deed, after her mother's death the deed was found in her possession, and that deed had been recorded the year of its execution. These exceptions are, therefore, overruled.

"XVII. Because his Honor erred in holding and charging the jury that the deed from Sarah Shealy and others to Henry Shealy conveyed a life estate to Sarah Shealy, or reserved a life estate in Mrs. Shealy.

"XVIII. For that his Honor erred in charging the jury: 'A deed may be so drawn as to convey a life estate to one person, and after the death of such person then to some one else absolutely; and this deed here introduced by plaintiffs, purporting to be signed by Sarah Shealy, Melvin Shealy, Jane Shealy, Amanda Shealy, Eliza Shealy, Marshal Shealy, Reedy Shealy, conveys a life estate to Mrs. Sarah Shealy and an absolute estate to Henry Shealy, but under this deed neither Henry Shealy nor his heirs would be entitled to the possession of the land described in this deed until after the death of Mrs. Sarah Shealy;' the error being that he told the jury that said deed conveyed a life estate to Sarah Shealy, and that under said deed neither Henry Shealy nor his heirs were entitled to the possession of it until after the death of Mrs. Sarah Shealy.

"XIX. Except because the Court erred in charging plaintiffs' seventh request, as follows: 'Under the terms of this deed, Henry Shealy, if then living, or his heirs, if he be then

dead, would be entitled to the possession of the land set forth and described in this deed, immediately upon the death of Mrs. Sarah Shealy;' the error consisting in his Honor's telling the jury that said deed conveys a life estate to Mrs. Sarah Shealy, and that Henry Shealy nor his heirs were entitled to the land until after the death of Sarah Shealy."

As to these three exceptions, we hold, that it was the duty of the presiding Judge to construe for the jury the meaning and effect in law of the deed of Sarah Shealy and others to Henry Shealy. *Pelzer, Rogers & Co.* v. *Steadman*, 22 S. C., 288. All the Circuit Judge did was to give the legal effect of the provisions of said deed, leaving the question of its execution to the jury itself, and we think that the construction placed upon the deed by the Circuit Judge was natural and proper, to wit: that a life estate was reserved in said land under said deed to Mrs. Sarah Shealy, and that the remainder therein vested in Henry Shealy, his heirs and assigns. These exceptions are, therefore, overruled.

"XX. Except, because the Court refused to charge the defendants' fifth request, as follows: 'And if, after execution, the deed is retained by the grantor for any purpose, such as security, for the payment of the purchase money, which indicated that the transaction is not yet complete, delivery will not be presumed,' when one of the material issues in the case was whether or not the deed had ever been delivered." We think the Circuit Judge exercised a proper care in refusing to charge the language requested by the appellants in this exception set forth. He had already stated to the jury that the matter of the. delivery of the deed was a question for their determination alone, in which he could be of no assistance to them, and the exercise of due care on his part not to trench upon the constitutional provision relating to charges on facts by Circuit Judges, was carefully observed. This exception is overruled.

"XXI. For that his Honor erred in refusing to charge the defendants' ninth request, as follows: 'I charge that under the deed from Sarah Shealy and others to Henry Shealy, that

if that deed was executed and delivered to Henry Shealy that he took an absolute fee simple title to the premises described in the complaint without limitation or condition, because the words used in said deed are not sufficient to create a life estate in said premises in favor of Sarah Shealy, or to give Sarah Shealy a life estate in said premises,' when it is respectfully submitted that under said deed Henry Shealy took an absolute title to said premises, and was entitled to the immediate possession thereof, upon the execution and delivery of said deed." We think the Circuit Judge properly construed the provisions of this deed as only carrying the remainder to Henry Shealy, his heirs and assigns, with a life estate to his mother, Mrs. Sarah Shealy, and, therefore, he ought not to have charged as requested herein. The exception is overruled.

"XXII. Because his Honor erred in refusing to charge the defendants' tenth request, as follows: 'You are further charged that words "excepting a life claim, which Sarah Shealy may have in said premises," does not create any charge or affix any trust, in a legal sense, upon the property conveyed to Henry Shealy in fee simple under said deed;' when it is respectfully submitted that the words thus used in said deed are not sufficient to convey a life estate in said premises to Sarah Shealy, and does not create any charge or affix any trust upon the property conveyed by said deed." This exception is virtually overruled by what we have held in construing the XXI. exception. We now formally overrule it.

"XXIII. For that his Honor erred in refusing to grant a new trial in said case, when the affidavits submitted showed that the father of Joe F. Fallaw, the foreman of the jury, had married the aunt of the plaintiff, and when the Court asked the jurors if any of them were related by blood or marriage to any of the parties to the action, the said juror stated that he was not related to them." We think the question here involved has already been fully answered by the Court in *Garrett* v. *Weinberg*, 59 S. C.,

page 162, 37 S. E., 51; *Mew* v. *Railroad Company*, 55 S. C., page 90, 32 S. E., 828; Code of South Carolina, 1902, sections 2940, 2946; 23d volume of the Statutes at Large, 39.

There is nothing in the case showing what ruling the trial Judge made on the motion for a new trial, nor is there anything in the case to show that the Court asked the jurors if they were related to any of the parties. The juror did say that he knew of no relation, and if he did not know, the relationship would not affect him. It is also plain that the defendants did not use due diligence in ascertaining if any juror was related to the parties, and the motion comes too late to set aside the verdict for this cause after its rendition. This exception is overruled.

"XXIV. Except, because the Court charged the jury a portion of plaintiffs' tenth request, as follows: 'In other words, under this deed here, I charge you that Mrs. Sarah Shealy had the right to the possession of the land described therein during her lifetime, but she could not hold said land adversely to Henry Shealy, or adversely to the heirs of Henry Shealy, neither could she hold it adversely to the purchasers of the interest of Henry Shealy's heirs." There is no specification of error in this ground of appeal, but if there had been we hold that the Circuit Judge did not err in his construction of the deed as set out. This exception is overruled.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.