### 8107

#### ROBERTSON v. WESTERN UNION TELEGRAPH CO.

1. APPEAL—EVIDENCE.—Admission of irrelevant evidence is not reversible error unless it be shown to have been prejudicial.

2. TELEGRAPH COMPANIES—VERDICT.—Under the evidence here the Court could not have directed a verdict on the ground that the office hours were reasonable, and the message could not have been delivered during office hours earlier, and that longer hours would have kept the employees on duty longer than prohibited by the interstate commerce law, or that there was no mental suffering as the proximate cause of defendant's negligence, without invading the province of the jury.

3. MENTAL ANGUISH.—CHARGE here, when considered as a whole, is not subject to the objection that mental anguish damages may be recovered for anxiety.

4. IBID.—REQUESTS as to time of suffering mental anguish and as to reasonableness of office hours could not have been given without invading the province of the jury.

5. NEW TRIAL.—There being evidence here tending to support all of the material issues of the complaint, there is no abuse of discretion in refusing motion for new trial.

6. IBID.—JUROR.—Where the Court at the request of one of the parties asks the jurors if any of them are related to the parties and no response is made, and neither party knew of any relationship, and the juror himself did not then know the parties, the verdict should be set aside on motion on after-discovered evidence showing that a juror was a great uncle to the plaintiff.

   *Senterfeit v. Shealy,* 71 S. C. 259, *distinguished from this.*

Before Sease, J., Edgefield, March term, 1911. Affirmed. Motion before Memminger, J., October. 1911. Reversed.

Action by Sallie Robertson against Western Union Telegraph Company. Defendant appeals on following exceptions:

I. "In that his Honor erred in permitting the plaintiff to testify as follows:

" 'You expected a reply to your telegram about 6 :30 that day? A. Yes, sir. Q. Now, from 6 :30, on the date you sent your telegram to Edgefield, state whether or not were you uneasy. A. Yes, sir. Yes, sir; I suffered a great deal. Q. And you thought you would get a reply to your telegram about 6 :30? A. Yes, sir. Q. Now, from 6 :30 until 10 :30, that night, were you unseasy about your husband? A. Yes, sir. Q. Had you suffered much in your mind? A. Yes, sir. Q. How did you feel from 6 :30 until 10 :30, that night? A. I had a severe headache and suffered a great deal. Q. Uneasy about your husband? A. Yes, sir.'

"The reason being that the testimony was irrelevant, the complaint alleging that the plaintiff suffered from 7 :00 o'clock p. m., July 18, 1910, until 10 :30 o'clock p. m., on the same date, to which hours the testimony should have been confined, and for the further reason that the plaintiff had testified that she had expected her husband on the 8 :00 o'clock train, her anguish, therefore, could not have commenced until she had been informed that her husband did not arrive on said train.

II. "In that his Honor erred in allowing the witness, M. A. Taylor, to testify as follows:

" 'I think, if the day operator goes off duty at six o'clock, that they should have an operator to take messages after six o'clock. Q. What would be a reasonable closing time?

A. I think eight o'clock would be a reasonable closing time, in the evening.   Q. A regulation closing the office at six o'clock, and not sending any telegram after that time, you would consider that an unreasonable rule?   A. Yes, sir.'   The reason being that the witness was testifying as to the reasonableness of hours in a town, the conditions existing in which he knew nothing, and that said testimony was the expression of an opinion of the witness without facts being stated upon which to base the same, and it was, therefore, irrelevant and incompetent.

III. "In that his Honor refused to direct a verdict for the defendant on the ground that the office hours of the defendant company in the town of Ninety-Six were proved to be from eight o'clock in the morning until six o'clock in the afternoon, and that there was no evidence tending to show that such office hours were unreasonable, and the undisputed testimony shows that the telegram about which complaint is made was not received and could not have been received at the office at Ninety-Six until said office was closed for business, and for the further reason that the interstate commerce law prohibits railroads and telegraph companies from keeping their employees in such offices on duty for a longer time than nine consecutive hours.

IV. "In that his Honor erred in refusing to direct a verdict for the defendant for the reason that if there was any mental anguish or suffering on the part of the plaintiff, it was not the direct and proximate result of any delict on the part of the defendant company.

V. "In that his Honor erred in charging the jury as follows: 'The statute as to mental suffering includes damages for anxiety and for negligence which prolongs anxiety;' the same being the seventh request of plaintiff, the error being that the statute does not allow damages for anxiety, but only for mental anguish or suffering in the absence of bodily injury.

VI. "In that his Honor erred in refusing to charge the sixth request of the defendant, which is as follows: 'The undisputed evidence shows that the plaintiff expected her husband to arrive on the four o'clock train, or on the eight o'clock train, and that he actually arrived at 10:30 o'clock, then you are only to consider such suffering as was the direct and proximate result of the failure of the telegraph company to deliver the message that would have relieved her suffering.' I charge you thus far, but I refuse to charge you the remainder of that request, which is: "After the eight o'clock train until the time her husband actually arrived;" because I charge you, gentlemen, that she is entitled to recover any damages by way of mental anguish or suffering that she suffered after a reasonable time had elapsed for the delivery of the telegram, which is alleged to have been sent from Edgefield some time around about six o'clock.' The error being that said request was the law applicable to the undisputed facts of the case.

VII. "In that his Honor erred in refusing to charge the eighth request of the defendant, which is as follows: 'I charge you that the business hours of the telegraph company at Ninety-Six, from eight o'clock a. m. until six o'clock p. m., established by the telegraph company, are reasonable, and if you find from all the circumstances and evidence that it was impossible to transmit the message from Edgefield to Ninety-Six before the office closed in Ninety-Six and before the husband of the plaintiff arrived, then your verdict should be for the defendant.' The error being that the evidence as to reasonableness of the office hours was undisputed.

VIII. "In that his Honor erred in refusing to grant the defendant's motion for a new trial upon the following grounds:

(1) "Because the verdict is absolutely excessive and capricious.

(2) "Because the verdict is contrary to the evidence adduced.

(3) "Because it is contrary to the charge of the Court as to the law of the case.

(4) "Because there is no testimony whatever that the suffering was the direct and proximate result of any act or delict on the part of the telegraph company.

(5) "Because, as to office hours, there is not a scintilla of evidence to contradict the fact, which was proven on the part of the defendant, that the office hours at Ninety-Six, from eight a. m. to six p. m., were reasonable hours.

(6) "On the ground that telegraph, railroad and telegraph companies engaged in interstate commerce, cannot keep its employees in the service over nine hours a day, and the testimony is that the office hours were from eight a. m. to six p. m.   The testimony is uncontradicted that the office there would not warrant the employment of a night operator.

(7) "On the further ground that there is no evidence of any waiver as to office hours at Ninety-Six.

(8) "On the ground that your Honor refused to charge our eighth request."

*Messrs. Geo. H. Fearons, John Gary Evans* and *N. G. Evans,* for appellant. *Mr. John Gary Evans* cites: *Relationship of jurors to party:* 24 Cyc. 273; 17 Ency. 1124; 34 S. C. 33; 5 S. C. 429; 73 S. C. 200; art. 5, sec. 6, Con. Code 1902, 3587; 61 S. C. 141. *Was due diligence exercised?* Code 1902, 2944; 11 S. C. 325; 54 S. C. 147: 54 S. C. 154; 80 S. C. 46; 41 S. C. 533; Code 1902, 2940. *No duty on carrier to deliver after office hours:* 71 S. C. 303; 75 S. C. 271. *No recovery for anxiety:* 81 S. C. 238.

*Messrs. Thurmond & Nicholson,* contra, cite: *Reasonableness of office hours is for jury:* 83 S. C. 8. *Statute includes all mental suffering:* 69 S. C. 531. *No statute fixing degree of relationship for juror:* 80 S. C. 46; 89 S.

C. 251; 61 S. C. 147. *Defendant did not use due dili-gence:* 59 S. C. 162; 74 S. C. 465; 89 S. C. 249; 54 S. C. 147. *This point is governed by Certerfeit v. Shealy,* 71 S. C. 260.

February 29, 1912. The opinion of the Court was deliv-ered by

MR. CHIEF JUSTICE GARY. This is an action for dam-ages, alleged to have been sustained by the plaintiff, through the negligence of the defendant, in failing to deliver a tele-gram within a reasonable time.

The plaintiff and her husband lived at Ninety-Six, S. C., and worked in the factory. The husband went to Edge-field, S. C., on a bicycle, to visit his sister, Mrs. Kate Waits, and becoming suddenly ill, sent the following telegram to his wife on the 17th of July, 1910: "I am sick; we will be home tomorrow on train."

He failed to arrive at home, on the 18th of July, and his wife, on that day, sent to him the following message: "When will you be home?" And in reply thereto, Mrs. Kate Waits, (in whose care the telegram was addressed), on the 18th of July, 1910, at six o'clock p. m., delivered to the defendant, for transmission, the following telegram: "Jerry is on way on bicycle; left at ten." The said tele-gram was not delivered to the plaintiff until the next day at ten o'clock a. m., July 19, 1910, and as the result of the failure to deliver the last mentioned telegram, the plaintiff alleges, that she suffered mental anguish.

The jury rendered a verdict in favor of the plaintiff for $500.00, and the defendant appealed upon exceptions, which will be reported.

*First Exception.* The ground of objection to the admis-sibility of the testimony, is, that it was irrelevant. Even conceding that there was error, the appellant has failed to satisfy this Court that it was preju-dicial.

*Second Exception.* The appellant has failed to show that if there was error, it was prejudicial to its rights.

*Third Exception.* His Honor, the presiding Judge, could not have directed a verdict, without invading the province of the jury.

*Fourth Exception.* What was said in disposing of the third exception, is conclusive of this question.

*Fifth Exception.* When the charge is considered in its entirety, it will be seen, that this exception cannot be sustained.

*Sixth Exception.* The presiding Judge could not have charged the request, as presented, without invading the province of the jury.

*Seventh Exception.* What was said in considering the sixth exception, is conclusive of this question.

*Eighth Exception.* There was testimony tending to sustain, all the material allegations of the complaint, and there does not appear to have been an abuse of discretion, on the part of his Honor, the presiding Judge, in refusing the motion for a new trial.

The second appeal is from the refusal of "a motion before his Honor, R. W. Memminger, presiding Judge, at the October term of the Court of Edgefield county, to set aside a verdict for the plaintiff rendered in this case, upon after-discovered evidence, showing that the foreman of the jury that found the verdict, was the uncle of the plaintiff."

The defendant introduced certain affidavits, in support of the motion, but it will only be necessary to reproduce the following:

Affidavit of Amos Eubanks, in which he says:

"That he sat as a juror, and was foreman of the same, in the case of Mrs. Jerry Robertson against the Western Union Telegraph Company; that he is the uncle of the father of Mrs. Jerry Robertson. That at the time the Circuit Judge asked, if any of the jurors were related to the

plaintiff, deponent did not answer, because he did not know who Mrs. Robertson was at that time, and the same had no influence on me."

Affidavit of Mr. John Gary Evans, which was as follows:

"That he is attorney for the Western Union Telegraph Company, defendant in this action, and that his brother, N. G. Evans, was associate counsel.

"That deponent had no knowledge of any relationship, existing between the plaintiff, Mrs. Robertson, and the foreman of the jury, Mr. A. Eubanks; that deponent requested the Court to ask the jurors, before they were sworn, whether they were related, by blood or marriage, to the plaintiff or her husband, in this action. That such question was asked, and no response whatever was made by any juror, and that the case went to trial and A. Eubanks appears upon the record, as foreman of the jury. That several months after the trial of the case, and verdict rendered, deponent was informed that the foreman of the jury, was the uncle of the plaintiff, Sallie Robertson, whereupon deponent instituted an inquiry, and ascertained through an affidavit of A. Eubanks himself, which affidavit is herewith submitted to the Court, that it was true that he was the great uncle of the plaintiff. That the Western Union Telegraph Company had no knowledge, so far as this deponent is able to ascertain, of any relationship existing between Mrs. Robertson and the foreman of the jury, prior to or at the trial of said cause."

The plaintiff introduced the following affidavit in reply:

Affidavit of Jerry Robertson, who says:

"That he is the husband of Mrs. Sallie Robertson, the plaintiff in the above entitled action, and was present at the trial of said case. That deponent never lived near Mr. Amos Eubanks, but married at Edgefield and moved from there to Ninety-Six, S. C., and didn't know of any relationship whatsoever between his wife and Mr. Eubanks,

when the jury was selected, and never heard of any relationship between them, until right recently."

Affidavit of Mr. J. W. Thurmond, who says:

"That he is a member of the firm of Thurmond & Nicholson, who represented the plaintiff in the above entitled action; and when said case was tried, he had no knowledge or information of any relationship between Mr. Eubanks, the foreman of the jury in said case, and the plaintiff in the action, and this deponent never heard of any such relationship, until since the verdict in said case was rendered. Deponent walked into the office of N. G. Evans, Esq., just as Mr. A. Eubanks had signed the affidavit offered by the defendant, on this motion, and Mr. Eubanks remarked to deponent that he thought the affidavit ought to contain the statement, that no relationship between him and the plaintiff, had any influence on him, in agreeing to the verdict in that case, and then deponent suggested to Mr. Eubanks that this statement should be incorporated in the affidavit, and so it substantially was. That deponent has known Mr. A. Eubanks for a number of years, and knows him to be a man of integrity and honor, and is satisfied that his statement is true to the effect, that he did not know of the relationship of the plaintiff to him, as mentioned in his affidavit, and besides, deponent is satisfied, that if it had been otherwise, the said juror would not have been influenced thereby, in his verdict in said case."

Affidavit of Mr. B. E. Nicholson, which is to the same effect as that of Mr. J. W. Thurmond.

Section 2944 of the Code of Laws is as follows: "The Court shall, on motion of either party in suit, examine, on oath, any person who is called as a juror therein, to know whether he is related to either party, or has any interest in the cause, or has expressed or formed any opinion, or is sensible of any bias or prejudice therein, and the party objecting to the juror, may introduce any other competent

evidence, in support of the objection.    If it appears to the
Court, that the juror is not indifferent in the cause, he shall
be placed aside as to the trial of that cause, and another
shall be called."

The rule is thus stated in the case of *State* v. *Brock,* 61
S. C. 141, 39 S. E. 359: "While the Circuit Judge com-
mitted error, in stating that jurors related by blood or con-
nected by marriage, within the sixth degree, to either of
the parties, were disqualified from sitting as such, and that
both consanguinity and affinity, within the sixth degree,
were grounds for legal exceptions, *under the statutes,* still
he stated a very salutary rule.    Certain the Legislature
has interdicted Judges, from sitting in cases of such rela-
tionship, and it is a good guide to the exercise of a sound
discretion by a Circuit Judge, to observe the same degree
of relationship."

In the case of *State* v. *Perry,* 73 S. C. 199, 53 S. E. 169,
the principle was announced, that the relationship of a jury
commissioner to a party, which would invalidate the find-
ing of a grand jury, must be such as would reasonably
lead to the presumption, that the commissioner would be
thereby affected in such manner, as to impair the proper
discharge of his duties, and that fact must be determined
by the trial Judge, in the exercise of a sound discretion.

If the practice prevailed, of allowing a person related to
a party litigant, either by consanguinity or affinity, as a
great uncle, to sit as a juror, especially as foreman, the
administration of justice, would be brought into disrepute.

The following language of the Court, in the case of
*State* v. *McQuaige,* 5 S. C. 429, is applicable to this case:
"The obligation resting on one engaged in drawing a jury
involves a duty of such a high, important and delicate
character, that its exercise must be free even from a sus-
picion of partiality.    It is true that no charge of wrong is
imputed to the commissioner, Courts must be governed by
general principles.    It is better for the community, that a

definite and established rule should prevail, not affected by any condition or provision, to be applied by any inquiry as to intention or motive, the ascertainment of which is almost impossible, save through the oath of the party, whose act may be the subject of challenge and examination."

The uncontradicted testimony shows, that the defendant's attorney requested his Honor, the presiding Judge, to ask the jurors, before they were sworn, whether any of them were related, by blood or marriage, to the plaintiff or her husband, in this action. That the question was asked, and no response whatever was made by any juror.

Although the motion for a new trial, on the ground that the plaintiff and the foreman were related, within the sixth degree, was addressed to the discretion of his Honor, the presiding Judge, nevertheless it was erroneously exercised, and the motion should have been granted.

The case of *Senterfeit* v. *Shealy,* 71 S. C. 259, 51 S. E. 142, upon which the respondent's attorneys principally rely, was materially different from the present case, in the important particular, that in the case of *Senterfeit* v. *Shealy,* the presiding Judge was not requested to ask the jurors, if they were related to any of the parties.

It is the judgment of this Court, that the judgment of the Circuit Court be reversed, and that the case be remanded for a new trial.

*Only* MESSRS. JUSTICES WOODS *and* HYDRICK *participated in this opinion, and concur in the result.*