## STATE v. CROCKER.

1. EVIDENCE—PLAT.—A surveyor being dead, a party for whom he made a plat cannot explain the meaning of certain lines placed on the plat by his direction, the same not being explained by memoranda on the plat.

2. IBID.—IBID.—It is not error to refuse to permit a witness to indicate with his finger an imaginary line on a plat.

3. IBID.—IBID.—RECORD—SECONDARY EVIDENCE.—Upon proof of loss of an original deed or plat, the official record may be introduced as secondary evidence without previous notice.

4. NEW TRIAL.—The refusal of a motion for a new trial, based on a question of fact, will not be considered by this Court.

Before WITHERSPOON, J., Chester, March, 1896. Reversed.

Indictment at common law against Wade and Walker Crocker, for obstructing common highway. Defendants were found guilty and sentenced. From this judgment they appeal.

*Mr. Geo. W. Gage*, for appellants, cites: *Classification of roads:* 1 McM., 47; 2 Strob., 62; 11 S. C., 368. *Introduction of records:* Rev. Stat., 2361.

*Mr. Solicitor Henry*, contra.

April 20, 1897. The opinion of the Court was delivered by

MR. JUSTICE GARY. The appellants were indicted, tried, and convicted at the March, 1896, term of the Court for Chester County, for obstructing a road described as a common highway. They made a motion for a new trial, which the Circuit Judge refused.

From the sentence imposed upon them they have appealed to this Court upon six exceptions, which will now be considered.

The first and second exceptions are as follows: 1st. "Because the presiding Judge excluded the Hicklin plat, made in 1857, because not proven to be correct by the person who made it; when he should have held that the plat needed no proof of its genuineness. 2. Because the presiding Judge excluded, as incompetent testimony, the Vincent plat." The case shows that his Honor first refused, but afterwards allowed the plats to be introduced in evidence. These exceptions are, therefore, overruled.

The third exception is as follows: 3. "Because the presiding Judge refused to allow the witness, Farrar, to explain lines of division on the Vincent plat, or to make any explanation of the same." In order to understand fully the question raised by this exception, it will be necessary to quote from the case as follows: "C. D. Farrar recalled. (Mr. Gage offers plat again. The Court: This plat was made, so this surveyor says, from a plat made by R. J. Otts, and I think, in the light of this other testi-

mony, although the other testimony was not objected to, I think it will be fair to let this plat in, under the circumstances. Plat offered in evidence, marked 'exhibit B.') Q. Now, sir, come down and explain this plat. (Mr. Solicitor objects to the witness explaining the plat. The Court: The question is, now, can he explain the plat—doesn't the plat speak for itself? Mr. Gage: Now, may it please your Honor, I want to ask this witness what those colored lines inside the plat mean. The Court: You can't do that now, the surveyor is dead. He is the one to explain that plat. Can he now, on account of the death of the surveyor, if he knows what certain lines mean, that being his own land, can he explain—being secondary evidence—the highest and best evidence being the surveyor himself? The Solicitor: I don't see how he can, unless he is a surveyor. The Court: Can he say what certain lines mean on this plat? The Solicitor: The only question is, whether that plat is a plain plat? If there is an error in it, it may be explained away. The Court: Mr. Gage, I will hear you upon this, whether a party, upon the death of a surveyor, where there is no evidence of what he intends by certain lines, whether an outside party can come here and say what that survey meant? Mr. Gage: The witness testified, in the first place, that Vincent made this plat; that Vincent lived in the same town with him; that he had a personal acquaintance with Vincent; that Vincent made this plat, and it has been in his possession ever since, and the lines were put there by his direction. The Court: Is that the testimony? Mr. Gage: That is the testimony. Is that correct Mr. Farrar? The Witness: That is correct, sir. The Court: The lines on the plat were fixed by his direction? Mr. Gage: Yes, sir; if you look on the plat, you will see these blue cross lines.) Q. You say put by your direction— was that before or after the plat was made? A. Put at the time the plat was made; it was made for that purpose. (Mr. Solicitor: Those are different surveys? A. No, sir, the same survey. Q. You say he put every mark there by your di-

rection? A. No, sir; I didn't say every mark, but certain marks, the most of them—the divisions—the way it is divided. Mr. Solicitor: If this witness, who claims to be the real party in interest, went and instructed the surveyor to put certain marks upon the plat, and he has been in possession of it, and he brings that plat into Court and it is unintelligible, I do not see how he can be allowed to explain the plat in his own interest. The Court: I will have to sustain the objection. I can't allow a party outside to say what the surveyor meant by certain marks which are not designated.) Q. I will ask him, then, may it please your Honor, for what purpose he had the survey made? A. I had that survey made to divide it off into certain tracts to sell it to colored people. Q. I see on here 'Scott Thomson tract'—what is that? (The Court: He said that he did it to sell land. I must sustain the objection. Defendants' counsel excepts.)" Testimony was introduced to show that Vincent was dead. The survey made by Vincent was *ex parte*, the object being "to divide the land into certain tracts to sell to colored people." As Vincent was a surveyor, and was not interested, the plat was his written declaration as to the boundaries of the land, and was admissible in evidence. The testimony shows that the blue lines on the plat, which the witness was asked to explain, were placed there *by his direction*, and cannot, therefore, be regarded as a part of the written declaration of Vincent as to the boundaries. The rule admitting testimony as to the declarations of deceased surveyor, and others, as to boundaries, is not to be extended beyond well settled exceptions. *Alexander* v. *Gossett*, 29 S. C., 421; *Taylor* v. *Glenn*, 29 S. C., 292; *Sexton* v. *Hollis*, 26 S. C., 231. So much of the plat as was made under the direction of the witness must be regarded as his declaration, and not that of Vincent. The witness was a party interested in making the survey, and was not a surveyor. His testimony was, therefore, incompetent to explain the lines placed on the plat by his direction. This exception is also overruled.

The fourth exception is as follows: 4. "Because, after the presiding Judge admitted the Vincent plat in evidence, he refused to allow the witness, Simms, to indicate thereon with his finger the location of the disputed road." The testimony of this witness was not offered for the purpose of explaining an ambiguity or other matter on the face of the plat necessary for a proper understanding thereof; nor for the purpose of varying its term, which, as it was made *ex parte* and was not attached to and made part of a deed, it seems he could have done by parol testimony. *Renwick* v. *Renwick*, 9 Rich., 50. But the sole purpose of introducing said testimony was to allow the witness to point out an imaginary line indicating the location of the disputed road; in other words, the effort was to use the plat as a diagram. This witness afterwards made a diagram, which was introduced in evidence. While we think his Honor might very properly have permitted the witness to indicate the location of the disputed road on the plat, still his refusal to allow the plat to be used as a diagram was not error, and this exception is also overruled.

The fifth exception is as follows: 5. "Because the presiding Judge erred in refusing to admit in evidence the books from the office of the register of mesne conveyance to prove the Otts plat, on the ground that ten days' notice of the purpose to offer the same had not been given to the solicitor." Section 2361 of the Rev. Stat. is as follows: "A copy of any deed of conveyance of real estate, certified by the register of mesne conveyance of the county where the same may be recorded, may be produced in evidence, in every court of this State, for any party, plaintiff or defendant, in like manner and subject to the same rules as are provided by the foregoing section in relation to grants and plats: *Provided*, That the party intending to offer in evidence such office copy shall give at least ten days' notice thereof to the opposite party or his attorney." It will be observed that this section has reference only to a certified copy, and not to the record itself.

The appellants' attorney did not offer to introduce in evidence a copy of the plat, certified by the register of mesne conveyance, but the original books of record. In ruling upon the admissibility of said testimony, his Honor said: "You have established the fact that the Otts plat is lost and can't be found. Now, if you were entitled to introduce secondary evidence, could you introduce it without notice?" The only objection to the introduction of the books in evidence was on the ground that the ten days' notice required by the statute had not been given to the solicitor. His Honor was satisfied that the deed was lost and could not be found. The question, then, for consideration is, whether ten days' notice is required when the party offers to introduce in evidence not a certified copy of a record, but the record itself. The object in allowing copies to be used in evidence was because of the inconvenience to the public that would necessarily arise from removing records, especially if they were wanted in different places at the same time. Gr. on Ev., sec. 91. Section 2371 of the Rev. Stat. of 1893 is as follows: "Nothing herein contained shall prevent any one from establishing, on the trial of any cause, any lost papers according to the rules of evidence existing at common law." (This section is the same as the proviso in subdivision 5 of section 2230, Rev. Stat. of 1882.) We are by this section remanded to the common law to ascertain the manner of proving a lost deed which has been recorded. A plat attached to a deed becomes a part of the deed. *Renwick* v. *Renwick*, 9 Rich., 50; *Duren* v. *Sinclair*, 22 S. C., 361. Under our recording acts, the registration of a deed constitutes a public record. Two of the modes of proving a lost deed are, by the record thereof, and a certified copy of the record; but they are separate and distinct. Both these methods of proof were provided by the act of 1731, which is partially set out in *Purvis* v. *Robinson*, 1 Bay, 493, and in the note to *Peay* v. *Pickett*, 3 McC., 318. The proof of a lost deed by the record thereof is made by virtue of a rule of evidence existing at common law; while

the right to introduce a certified copy is purely statutory. The rule of evidence relative to the proof of a record is thus stated in Gr. on Ev., sec. 501: "As to the proof of records, this is done by mere production of the records, or by a copy. Copies of record are (1) exemplifications; (2) copies made by an authorized officer; (3) sworn copies. Exemplifications are either, first, under the great seal, or, secondly, under the seal of the particular court where the record remains." * * * It thus appears that one of the modes of proving a record is by the production of the record itself, which the appellants offered to do in this case. As section 2361 makes no reference to proof of a lost deed by the introduction of the record thereof, but only provides for the introduction in evidence of a certified copy, upon compliance with the requirements therein mentioned, this Court is not at liberty to add to the provisions of said section by making it apply also to the introduction in evidence of the record itself. Section 2371 sustains this view, and shows clearly that section 2361 was not intended to be exclusive, but that the rules of evidence existing at common law are still of force. In construing the act of 1731, out of which section 2361 arose, the Court, in *Purvis* v. *Robinson, supra,* said: "* * * it (the act of 1731) did not appear to intend any alteration in the rules of evidence, but only to provide a more certain and authentic mode of supplying the loss of deeds." The books were better evidence than the Vincent copy of the Otts plat, because, first, they constituted a record; second, an officer is presumed to have discharged his duty, and it was his duty to have examined the copy on the books of record to see that it corresponded with the original deed; and, third, the deed could not have been placed on record until it was probated. None of these safeguards were thrown around the copy made by Vincent. These views do not conflict with the ruling in *Duren* v. *Sinclair,* 22 S. C., 361, because in that case no attempt was made to prove the loss of the deed, and the Court necessarily reached the conclusion announced in that

case upon this question. As this case does not come within
the provisions of section 2361, it was not necessary to give
the notice required by that section. *Hobbs* v. *Beard*, 43 S.
C., 370. The several plats played an important part upon
the trial of the case; the testimony offered by the defend-
ants was in rebuttal of that brought out by the State, and
the refusal by the presiding Judge to allow its introduction
without notice was erroneous. The fifth exception is, there-
fore, sustained.

The sixth exception is as follows: 6. "Because the pre-
siding Judge erred in refusing to set aside the verdict on
the ground that there was no proof that the road in
question was a common highway." This exception
only involves a question of fact, which is not the
subject of review by this Court, and is, therefore, overruled.

It is the judgment of this Court, that the judgment of
the Circuit Court be reversed, and the case remanded to
that Court for a new trial.

MR. JUSTICE JONES, *dissenting*. I am unable to concur
in sustaining the fifth exception. Defendants' counsel of-
fered in evidence a record book from the office of register
of mesne conveyance of Chester County to prove a plat
called the Otts' plat, without having given ten days' notice
of his intention to do so, and without offering any evidence
that the copy of the plat in the book had been compared
with the original Otts plat. Section 2361 of the Revised
Statutes permits a certified copy of any deed to be intro-
duced in evidence, provided the party intending to offer in
evidence such office copy shall give at least ten days' notice
thereof to the opposite party, or his attorney. If, therefore,
this section applies to this case, the evidence was properly
excluded for want of the required notice. Did the offering
of the record book itself, instead of a certified copy, take
the case from under the statutory requirement as to notice?
In the case of *Duren* v. *Sinclair*, 22 S. C., 365, this Court
said: "The defendant proposed to introduce not a copy but

the books of record, and that, too, without having laid the foundation, by averring as to the loss and by giving the necessary notice as required in the act. We do not know by what authority such evidence could have been allowed. Certainly not by the section above, for the simple reason that it was not proposed to introduce a copy, as provided for therein, nor was any oath made as to the loss, &c., nor any notice given as to the intent. There was, in fact, not the slightest approach to a compliance with the requirements of the act in such case made and provided. * * * The defendant desired to introduce this copy on the books to show the extent of his adverse holding. Certainly the original deed in which the boundaries of the land were described would have been the primary and best evidence of these boundaries, and was the evidence which the general rules of evidence demanded, and before the defendant could ask that these rules should be suspended in his behalf, he should have brought himself *under* the act which provides for such suspension. This he failed to do entirely." Now, it may be that if the statute as to proof of loss and notice is complied with, the record book showing a copy of the original on it might be allowed in evidence as within the spirit if not the letter of the statute, since a *copy on the record* is as good as a *certified copy of the copy on record;* but it is settled by the case above cited that the record book is not admissible in evidence to prove a deed, without compliance with the requirements of the statute, not only as to proof of loss of the original, but also as to the required notice. Assuming that there was satisfactory proof of loss of the original, and evidence was still inadmissible under this statute, because of the failure to give the required notice. We know of no other statute under which it could be claimed that the record book is admissible to prove the plat as a part of a recorded deed.

It remains to see if the evidence was admissible under the common law rules of evidence. Granting that defendant made due proof of the loss of the original plat, how is

he to prove its contents?   He offers a book said to contain
a copy of the plat.   Now, the rule as to proving the con-
tents of a lost paper by a paper purporting to be a copy of
the lost original, requires evidence that the alleged copy
has been compared with the original.   Mr. Wharton, in his
work on Criminal Evidence, 178, says: "According to the
English practice, an examined copy to be admissible must
be verified by a witness, who will swear that he has com-
pared the copy tendered with the original, either directly
or through a person employed to read the original."   Mr.
Starkie, in his work on Evidence, 9th Am. edition, 270,
says: "The general rule of law upon this subject requires
that a copy, in order to be admitted as secondary evidence,
should be proved by some one who has compared it with
the original."   To the same effect see Phillips on Evidence,
2 vol., p. 480.   In this case no proof whatever was offered
to show that the alleged copy of the Otts plat, found in
the record book, had been compared with the original Otts
plat in question.   This was fatal to the introduction of the
book as a copy.   I do not understand that the case of *Hobbs
v. Beard*, 43 S. C., 370, alters this well settled and salutary
rule of evidence.   In that case the Circuit Judge refused to
allow a witness to speak of the contents of the record of a
lost deed, when the record itself had been destroyed by fire.
He said, in ruling on the question: "The only way a record
of that Court can come into this Court at all is by the mode
provided by law, which is, that a notice so many days be-
forehand shall be given to produce the paper, and in case
of non-production, use the office copy.   *If that book itself
were here to-day, it would be no evidence in regard to the
contents of that deed.* * * * If you can't prove by the books
themselves, I don't see how you can prove it by a witness
who saw that book."   This Court, speaking through Mr.
Justice Gary, said: "As a general proposition, the rule an-
nounced by the presiding Judge is correctly stated.   This
case falls under a different rule, because the record of the
deed has been destroyed by fire."   This Court, in overrul-

ing the Circuit Judge, finally said: "If his Honor was sat-
isfied that the deed was lost, *and that the plaintiffs did not
have it in their power to produce higher evidence than that
offered by them as to the contents of the deed*, *then* the testi-
mony was competent," &c. (italics ours). As the basis for
this conclusion, the Court cited from *Hunter* v. *Glenn*, 1
Bail., 542, that "to let in inferior proof, the party offering
it must show that no higher is in his power." This case,
therefore, does not conflict with the view herein advanced,
for in this case there is no destroyed record of which it is
sought to prove the contents; and it cannot be said in this
case that the Circuit Judge was satisfied the defendant did
not have it in his power to produce higher evidence than
that offered as to the contents of the plat. On the contrary,
it was shown in this case that there was higher evidence.
The Circuit Judge allowed defendants' counsel to introduce
in evidence a plat called the Vincent plat, under these cir-
cumstances, as shown at folio 130 of the case: "C. D. Farrar,
recalled. Mr. Gage offers plat again. The Court: This
plat was made, so this surveyor says, from a plat made by
R. J. Otts, and I think, in the light of this other testimony;
although the other testimony was not objected to, I think
it will be fair to let this plat in under the circumstances."
Now here was a copy of the Otts plat, which had been
made by a surveyor from the original plat, and it was ad-
missible and admitted under the rule above set forth, re-
quiring evidence that a copy had been compared with the
lost original, before it is admissible to prove the contents
of the original. It cannot be said, then, that the evidence
rejected in this case was the best evidence of which the
nature of the case was capable. Here was higher evidence
not only available, but actually availed of by the defendant.
Being unable to see wherein the Circuit Judge has com-
mitted any error harmful to defendants, I think the judg-
ment below should be affirmed.