15117

MACEDONIA BAPTIST CHURCH v. CITY OF COLUMBIA

(10 S. E. (2d), 350)

September, 1939.

*Messrs. Paul A. Cooper* and *Charles F. Cooper,* for appellant,

62 

*Messrs. Owen T. Cobb* and *J. Edwin Belser, Jr.,* for respondent, 

July 5, 1940.

The opinion of the Court was delivered by MR. CHIEF JUSTICE BONHAM.

Counsel for the appellant and respondent differ sharply in the "statements" set out in their respective briefs of the fundamental facts of this case. We will predicate our preliminary statement upon the facts set out in the Transcript of Record. Under the ruling governing the preparation of the Transcript, counsel must be held to have agreed upon that "statement."

This is an action to recover damages alleged to have been caused by surface waters drained from the streets of the City of Columbia, and cast upon certain real estate owned by the respondent. The facts relied upon and set out in the complaint charge the defendant with negligence and willfulness in certain respects. It is alleged that Macedonia Baptist Church is a corporation created under the laws of South Carolina, organized by certain colored persons who erected a church at the northeastern corner of the intersection of Huger and Pendleton Streets in the City of Columbia. At the time of the erection of the church in May, 1914, a small stream ran by the eastern side of this property, which drained the highlands, including the streets and sidewalks of the said city to the south and east of Huger and Pendleton Streets. That the. City of Columbia, through its agents and servants,. has opened up ditches, widened roadbeds, paved streets, cleaned sidewalks and by other acts has caused

the amount of water, during rainy seasons, coming down said creek to be greatly increased in volume and rapidity of drainage, but the city has made no provision for the proper control, drainage or carrying away of the same; that the city, by and through its agents and servants, has caused an embankment or dam to be erected on the eastern side of said creek to prevent the flood waters of the same from spreading out over its natural drainage level which cause it to run over the property of the white residents on that side of the creek, thereby confining the water to a smaller drainage area and increasing its rapidity of flow with the result that the said water was discharged with great force and velocity on the lands of plaintiff and by reason thereof has washed away, and continues to wash away and damage the lands of plaintiff, of all of which the said city had notice. That within the past few years the defendant, by and through its agents and servants, raised the level of a street, or alley way, just north of the plaintiff's property, known as "Tree Street Alley," but only erected a small bridge to carry away the normal flow of water. The building of the said embankment or roadbed and failure to provide for carrying away the water in rainy seasons caused the said flood waters, during the rainy season to back up and over the foundation of the aforesaid church and thereby weakening the said foundation. That the aforesaid acts on the part of the city were negligent, willful and reckless and by reason thereof, on July 16, 1938, during a severe rainstorm following a rainy season, the waters of the said creek were turned with great force and velocity in and over the pillars of the said church building, washing out the foundation of the church on its eastern side, causing it to give way and causing the roof and walls of the church to give way and fall in. Plaintiff asks judgment for Three Thousand ($3,000.00) Dollars.

The defendant's answer was a general denial.

The case came on to be heard in the Richland County Court before Judge A. W. Holman and a jury.

Mr. Cobb, an attorney for plaintiff, moved that at the convenience of the jury it go and look over the premises in question.

"The Court: It will be considered that the premises are in evidence. Any objection, Mr. Cooper?

"Mr. Cooper: No, sir. We want them to look at them.

"The Court: The premises are considered in evidence, and leave that to the jury."

At the conclusion of the testimony in behalf of the plaintiff, counsel for .defendant made a motion for nonsuit on the merits of the case, on the ground that the testimony of the plaintiff actively and overtly shows that any damage that the plaintiff sustained was caused by causes over which defendant had no control, and actively and overtly shows that defendant has not been guilty of negligence and that plaintiff has failed to show ownership, and plaintiff has failed to show lack of contributory negligence on its part. The motion was overruled.

Motion for directed verdict in its favor was made by defendant on the same grounds as that for nonsuit, and was likewise refused.

The jury rendered a verdict for plaintiff in the sum of one thousand dollars.

Defendant moved for a new trial on twelve grounds, five of which allege that there was no evidence to support the verdict; and allege error in the admission of the record copy of the deed of plaintiff; and allege error in the charge of the trial Judge in relation to Section 7301 of the Code; and one on the ground that the plaintiff did not allege nor prove lack of contributory negligence on its part.

In an exhaustive and well-considered order, the motion for new trial was denied.

The defendant appeals upon grounds stated in thirty-three exceptions, but in their brief, counsel for appellant state the questions raised and to be decided to be five, and state them as follows:

"I. Does the record contain evidence to show any actionable negligence on the part of the defendant, City?

"II. Is Section 7301 of the Code of Laws, 1932, upon which this action was predicated at the trial, applicable to the facts in the case?

"III. Can the judgment be sustained on the basis of Section 7345 of the Code of Laws, 1932, the same having been injected into the case for the first time in the Order overruling defendant's Motion for New Trial?

"IV. Was one isolated deed from an individual, dated in 1914, sufficient by itself to prove plaintiff's title to the property in question?

"V. Was the Court record of the alleged deed to the plaintiff properly received in evidence?"

While the Court was charging the jury:

His Honor said: "I believe this case, Mr. Cobb, is brought under the *Chick Springs case*.

"Mr. Cobb: Your Honor, we bring it under that Statute 7301 of the Civil Code."

That statute is in the following language: "Municipalities to Provide Drains for Surface Water.—Whenever within the boundaries of any municipality, it shall be necessary or desirable to carry off the surface water from any street, alley or other public thoroughfare, over the private lands, property adjacent or adjoining such thoroughfare, upon demand from the owner or owners thereof, such municipality shall provide sufficient drainage for such water through open or covered drains except where the formation of the street renders it impracticable, along or under such streets, alleys or other thoroughfare in such manner as to prevent the passage of such water over such private lands or property: Provided, That if such drains cannot be had along or under such streets, alleys or other thoroughfare, then the municipal authorities shall have the power and authority to obtain under proper proceedings for condemnation as for highways on payment of damages to the landowner, a right of way

through the lands of such landowner for the necessary drains for such drainage. That, if any municipal corporation in this State shall fail or refuse to carry out the provisions of this section, any person injured thereby may have and maintain an action against such municipality for the actual damages sustained by such person."

Appellant's first stated question raises the issue that there is no evidence to show any actionable negligence on the part of the city. A glance at the language of the above statute discloses that if the city finds it "necessary or desirable to carry off the surface water from any street, alley or other public thoroughfare, over the private lands, property adjacent or adjoining such thoroughfare, upon demand from the owner or owners thereof, such municipality shall provide sufficient drainage for such water. * * * "

It is admitted that such drains in the present instance were not provided by the city. Here was negligence *per se*. There is evidence that the officers and representatives of plaintiff, Macedonia Baptist Church, made protest to Mr. Tomlinson, city engineer in charge of its streets. He admits that he had a letter from the Rev. Kennedy in reference to the condition of the property. Mr. Tomlinson thinks that the Rev. Kennedy spoke to Mr. Eleazer, councilman, about the condition of the church. Still nothing was done by the city to supply drains to receive the surface water which the city was carrying on to the property of the plaintiff. There is testimony from W. M. Kennedy, William Robinson and David Hall, members of the church, that appeal was made to the city agents and officers anent and damage being done to their church property by surface water thrown upon, under and against it by the city and nothing was done about it. Here is proof of actionable negligence. Mr. A. C. Wilkinson, a civil engineer, testified that on the eastern side of the branch there is a retaining wall built up of creosoted lumber which protects the lot on the east bank of the creek and turns the water westward towards Huger

Street for a distance and then curves and throws it towards Tree Street Alley, and that that wall in the flooding season would tend to throw more water under where the church was. That wall, the main part of the wall, would direct the water towards the center pillars of the church. "Q. In your opinon as an engineer would you or not say that the cause of those pillars being washed out, one of the causes, was the building of the retaining wall on the opposite side of the creek? A. I think that had a great deal to do with it; yes, sir."

It is useless to cite more of the evidence, there is much of it, to show that there was sufficient proof of negligence, on the part of the city tending to make it, under the statute, guilty of actionable negligence, to take the case to the jury. And the jury has decided that point against appellant's contention as stated in its first question.

By its second question, the appellant challenges the applicability of Section 7301 to the facts of this case.

We have hereinabove set out the provisions of Section 7301. The gist of appellant's argument anent its contention hereabout is that the only two streets to which the plaintiff's property is adjacent or adjoining are Huger on its western boundary and Pendleton on its southern boundary. Appellant says: " * * * There is no evidence of any kind in the record to the effect that the city, or anyone else, committed any act on or in connection with either of these adjacent or adjoining streets, affecting in any manner the natural flow or drainage of surface waters therefrom; in fact, no evidence is offered to show that any of the surface water, which is alleged to have caused plaintiff's damage, even came from either of these two streets in the course of natural drainage. * * * ."

Counsel has failed to include the streets, or alleys, from which surface water was cast upon plaintiff's property and contributed to its damage. As we have shown by the testimony hereinabove cited, only in part, through the active

agency of the city, its agents and servants, the natural flow
or drainage of the surface water of Tree Street Alley was
changed and cast upon plaintiff's property, and there is ample
evidence in the record that the surface water from paved
streets and certain private property was so directed by the
city as to send it down Pendleton and Huger Streets with
accelerated velocity on the property of the plaintiff, and thus
damaged plaintiff's property. We shall not undertake to re-
produce all of the evidence bearing on this subject. It suf-
fices to reproduce that of Mr. Sidney Tomlinson, the city
engineer, and a witness for the city:

"A. * * * The city has not diverted any water from
any other area here to this area, but, as the houses go up,
you have a greater run of water.

"Q. This new Assembly Street Market, all of that runs
down into the creek? A. Yes, sir.

"Q. Your storm drains go to the natural level and dump
into this creek? A. Yes, sir.

"Q. And that has been built lately? A. Yes, sir. That is
one more improvement that the city has made recently.

"Q. And you know it is the duty of your department to
take care of the branch water in the city? A. Yes, sir.

"Q. And you know under the statute and laws, you have
the right, if necessary, to dam lands and to arrange for the
carrying off of water to prevent damage; that is part of your
duty, and you never remember having a complaint from any
of those colored folks whatsoever? A. Yes, I think I tes-
tified that we had a delegation come up there.

"Q. I mean prior to the damage to the church; do you
remember any colored persons coming to you with reference
to the Macedonia Baptist Church? A. I do not recall any,
although they may have.

"Q: You have heard them testify that they came to see
you? A. I thought they were talking about the same time I
was talking about.

"Q. You heard them testify along in '32. That was before the church was destroyed, wasn't it? A. I don't know that.
* * *

"Q. But the city has increased the flow of water down that basin? A. When you say the city, I presume you mean all of the property owners?

"Q. No; just the city. A. The building of houses and roads and so forth and paving the streets certainly has put more water down there.

"Q. Leave the property owners out. When you pave a street aren't you going to increase the flow of water in the natural drainage basin during a rainy season? A. Nothing more than the area on a particular paved street.

"Q. Well, the water don't soak through the street cement? A. No, sir; and it don't soak through roads either.

"Q. And goes down to that branch? A. Yes, sir.

"Q. And you haven't made any provision for that? A. No, sir."

It is needless to cite other testimony to show that the statement of appellant's counsel, with which we are dealing, is inaccurate. We cite pages 53 and 54 of the Transcript. Indeed, we may cite practically all of the testimony of the witness, A. C. Wilkinson, beginning at page 45 of the Transcript.

Appellant contends that the judgment of the lower Court should be reversed because the trial Judge, in his order which denied the motion for new trial, stated that the judgment might be sustained under the provisions of the Act 7345, "which was injected into the case for the first time in the order overruling the motion for new trial."

We do not think it necessary to determine whether the judgment may be sustained under the provisions of Section 7345 of the Code. The trial Judge held that the verdict was sustained under the provisions of Section 7301, on which it was tried. As appellant states, Section 7345 was

not injected into the case until after the trial and could, therefore, have had no effect on the verdict of the jury and the judgment of the Court. There is no merit on the exception.

Nor do we think there is merit in the exception that in his order refusing the motion for new trial, the trial Judge held that plaintiff had proved title by virtue of the provisions of Sections 375 and 378 of the Code. The question of proof of title by prescription was not submitted to the jury who found for plaintiff.

Appellant's Question IV is in the following words: "Was one isolated deed from an individual, dated in 1914, sufficient by itself to prove plaintiff's title to the property in question?"

This is not an action to try title. It is one to recover damages for trespass to property of which the plaintiff was in possession. The deed which plaintiff produced was sufficient to show that the church was in lawful possession of the property and no one has offered to show any paramount title to it. Appellant states in its argument that the rule in point is stated in the case of *Hodge v. Hodge,* 56 S. C., 263, 34 S. E., 517. That was an action for the possession of land in which issues of fraud appear. The plaintiff could not produce a deed to the land, and the question of title by possession arose. As we have hereinbefore said, we do not think that question is properly before the Court because plaintiff here has proved a deed and possession thereunder from June 14, 1914, to September 14, 1939, the time of the commencement of this action. In the *Hodge case,* Chief Justice McIver did say that if plaintiff had been in possession of the premises for ten years since the Act of 1873 (now Section 375, Code 1932), she would have a right upon which she could prosecute or defend her action. In the present case plaintiff has had possession for more than twenty-five years. But as we have said, we need not discuss that issue. Plaintiff has proved its title under a deed and is in

lawful possession, and the trespass complained of is against that possession.

"The gist of trespass is the injury to possession, and in England the rule has always been that actual possession was necessary, and the doctrine has been followed to some extent in this country. But the general rule in most of the states is that either actual or constructive possession is sufficient to maintain trespass. * * *" 63 C. J., 903, Section 20.

The exceptions relating to Question IV are overruled.

"Question V: Was the Court record of the alleged deed to the plaintiff properly received in evidence?"

We take it that the appellant under this question intends to argue that the Court erred in admitting the record copy of the deed because the plaintiff had failed to prove the loss or destruction of the original deed, and had failed to lay a proper foundation for the introduction of secondary evidence. Appellant argues that in order to maintain this action plaintiff must prove its title back to a grant from the State.

We do not agree with that statement as applicable to the facts of this case. No one is claiming the property of right superior to that of plaintiff. It was necessary for plaintiff to prove that it was in lawful possession of the property which it alleges was damaged by the negligence of the defendant. Was the deed under which it offered to prove its title and possession lawfully admitted in evidence? In other words, was there sufficient proof that the deed was lost or destroyed to admit of the proof of the record deed in the Clerk of Court's office?

William Robinson testified that he was for seventeen years the clerk of the Macedonia Baptist Church, and as such clerk had charge of all of the papers of the church, including the deed to it. He testified:

"The deed must be destroyed or lost. The record ought to be in the Court house. * * * It was my duty to keep all of the papers of the Church. I had the deed. I have not

got it now. I don't know where it is now. It must be lost. Rev. Myers had the deed; R. A. Myers had the deed. I never got it back from him. He is either dead or went to the insane asylum, and probably took it with him."

Defendant objects to the introduction of the record of the deed on the ground that they have not proved the loss or destruction of the deed, and that is not the way to prove title.

"The Court: I will let it go in under the objection. By Mr. Cobb: * * * I will read the description. Listen to this description. (Reads description in deed from Court House record.) Is that the description of the property that you all have down there? A. Yes, sir. * * *

"Q. If the deed is dated about June 6, 1914, is that about the time that you bought the lot? A. Yes, sir; that is about the time we bought the lot."

It appears elsewhere in the record that Rev. Myers went to the asylum and is now dead.

The introduction of evidence is always a matter addressed to the discretion of the Court; of course, within the limitation of the fixed principles of law applicable and relevant to the instant issue. We think that the discretion of the trial Judge was properly exercised in admitting the proof of the record of the deed in this case. It must be borne in mind that there is a marked difference in the provisions of Section 722 of the Code of 1932, as they relate to proof of copies of lost deeds, and the provisions of Section 723 which relate to the proof of the deed by the deed itself.

"§ 722. Copies of Deeds Where Originals Are Lost.—A copy of any deed or conveyance of real estate certified by the register of mesne conveyances or clerk of court of the county where the same may be recorded, may be produced in evidence in every court of this State for any party, plaintiff or defendant, in the manner and subject to the same rules as are provided by the foregoing section in relation to grants and plats: Provided, That the party intended to of-

fer in evidence such office copy shall give at least ten days' notice thereof to the opposite party or his attorney.

"§ 723. Proof of Recorded Instruments, Other than Wills, by Production of Original.—The production (without further or other proof of the original of any and every instrument in writing (other than wills) required by law to be recorded shall always and everywhere be *prima facie* evidence of the execution and recording of such instrument: Provided That such instrument shall have been recorded in the manner and place and within the time prescribed by law for recording the same, and the recording thereof shall have been certified by the clerk of court or register of mesne conveyance: And Provided, further, that any party or his attorney so producing any such recorded instrument shall have given at least ten (10) days' previous notice in writing to the opposite party or his attorney of the intention so to produce any such recorded instrument with a description of the same."

This distinction is so clearly pointed out in the case of *State v. Crocker,* 49 S. C., 242, 27 S. E., 49, 50, that we venture to quote from it fully. It is a complete answer to appellant's fourth question: "The fifth exception is as follows: '(5) Because the presiding judge erred in refusing to admit in evidence the books from the office of the register of mesne conveyance to prove the Otts plat, on the ground that ten days' notice of the purpose to offer same had not been given to the solicitor.' Section 2361 of the Revised Statutes is as follows: 'A copy of any deed of conveyance of real estate, certified by the register of mesne conveyance of the county, where the same may be recorded, may be produced in evidence, in every court of this state, for any party, plaintiff or defendant, in like manner, and subject to the same rules, as are provided by the foregoing section, in relation to grants and plats: provided: that the party intending to offer in evidence such office copy, shall give at least ten days notice thereof, to the opposite party, or his

attorney.' It will be observed that this section has reference only to a certified copy, and not to the record itself. The appellants' attorney did not offer to introduce in evidence a copy of the plat certified by the register of mesne conveyance, but the original books of record. In ruling upon the admissibility of said testimony, his honor said:

'You have established the fact that the Otts plat is lost, and can't be found. Now, if you were entitled to introduce secondary evidence, could you introduce it without notice?' The only objection to the introduction of the books in evidence was on the ground that the 10 days' notice required by the statute had not been given to the solicitor. His honor was satisfied that the deed was lost, and could not be found. The question, then, for consideration is whether 10 days' notice is required when the party offers to introduce in evidence, not a certified copy of a record, but the record itself. The object in allowing copies to be used in evidence was because of the inconvenience to the public that would necessarily arise from removing records, especially if they were wanted in different places at the same time. *Greenl. Ev.*, § 91. Section 2371 of the Revised Statutes of 1893 (now section 733, Code 1932) is as follows: 'Nothing herein contained shall prevent anyone from establishing on the trial of any cause, any lost papers, according to the rules of evidence, existing at common law.' * * * We are, by this section, remanded to the common law to ascertain the manner of proving a lost deed which has been recorded. A plat attached to a deed becomes a part of the deed. *Renwick v. Renwick,* 9 Rich. Law, 50; *Duren v. Sinclair,* 22 S. C., 361. Under our recording acts the registration of a deed constitutes a public record. Two of the modes of proving a lost deed are by the record thereof, and a certified copy of the record; but they are separate and distinct. Both these methods of proof were provided by the act of 1731, which is partially set out in *Purvis v. Robinson,* 1 Bay, 493, and in the note to *Peay v. Picket,* 3 McCord, 318. The proof of

a lost deed by the record thereof is made by virtue of a rule of evidence existing at common law, while the right to introduce in eviddence a certified copy is purely statutory. The rule of evidence relative to the proof of a record is thus stated in Greenl. Ev., § 501: 'As to the proof of records, this is done by mere production of the records or by a copy. Copies of record are (1) exemplifications; (2) copies made by an authorized officer; (3) sworn copies. Exemplifications are either, first, under the great seal, or secondly, under the seal of the particular court, where the record remains.' It thus appears that one of the modes to proving a record is by the production of the record itself, which the appellants offered to do in this case. As section 2361 makes no reference to proof of a lost deed by the introduction of the record thereof, but only provides for the introduction in evidence of a certified copy upon compliance with the requirements therein mentioned, this court is not at liberty to add to the provisions of said section by making it apply also to the introduction in evidence of the record itself. Section 2371 sustains this view; and shows clearly that section 2361 was not intended to be exclusive, but that the rules of evidence existing at common law are still of force. * * * "

The *Crocker case* is thus cited in *Sentereit v. Shealey*, 71 S. C., 259, 268, 51 S. E., 142, 144: " 'It thus appears that one of the modes of proving a record is by the production of the record itself.' " And again in the case of *Lancaster v. Lee*, 71 S. C., 280, 283, 51 S. E., 139, 140, this is said: "Under *State v. Crocker*, 49 S. C., 242, 27 S. E., 49, if the deed had been properly recorded, the official record, upon proof of the loss of the original, could have been introduced without previous notice." *In the case of Uzzell v. Horn*, 71 S. C., 426, 433, 51 S. E., 253, 255, this is found: "This Court has held in the case of *State v. Crocker (supra)*, that the records of such deeds (lost deeds) may be introduced without notice."

In the case of *Vance v. Ferguson,* 101 S. C., 125, 85 S. E., 241, 243, this is said:

"The plaintiff did not have or did she offer in evidence the deed from the Elmwood Cemetery Company to the Randolph Cemetery Company, plaintiff's grantor; she offered in place of it the book from the office of register of mesne conveyances, whereon the original had been spread according to law.

"There was no proof, aside from that record itself, that such a deed had aforetime existed and was lost. The proof of the deed's existence by the record of it alone does not bring the case within the rule announced in *The State v. Crocker,* 49 S. C., 242, 27 S. E., 49. The record of a deed does not prove the existence of the deed, unless its existence cannot be better shown, for the best evidence of the deed the paper itself, and the secondary evidence of it, to wit, the record, is only allowable when the best cannot be had

"There ought therefore to have been some proof, aside from the record, that such a deed had existed but could not be found."

To the same effect is the case of *Wilson v. Moseley,* 113 S. C., 278, 280, 102 S. E., 330.

In the case now before this Court, the plaintiff introduced evidence from two witnesses who had seen the deed, one of whom had been its custodian. To one of them the deed as recorded was read and he testified that from the language as read he recognized it as the lost deed. The trial Judge was satisfied that the deed had existed and was lost, and that the proof of the record could be introduced without notice.

The exceptions relating to appellant's Question V are overruled.

Reverting to appellant's reiterated contention that there is no evidence in support of the allegations of the complaint as they relate to the waters of the streets being directed and cast upon the property of plaintiff and thus became the

proximate cause of the damage complained of, it may be recalled that the jury reviewed the premises, and there is nothing in the record to suggest that it lacked the intelligence to comprehend and apply the evidence which its faculties received. Both parties concurred in the motion that the jury view the premises.

In the case of *Morgan v. Greenville County*, 189 S. C., 368, 1 S. E. (2d), 144, 147, Mr. Justice Baker, for the Court said: " 'At the suggestion of counsel for both sides, the jury viewed the locus. The jury in this case was one of unusual intelligence. They saw the situation and were able doubtless in this way to get a more complete picture of the situation than the cold testimony would disclose. I see no reason for disturbing the verdict.' "

In his order denying the motion for new trial Judge Holman said; page 87 of the Transcript: " * * * The premises having been properly offered and received in evidence, the jury elected to view the same, and, after having viewed the said premises, found as a fact that water being drained from the adjacent streets was turned upon the lot of plaintiff, with the resulting injury for which plaintiff seeks to recover herein. * * * "

It would seem that the contention of appellant that there was no evidence to sustain plaintiff's complaint, is finally decided against it by the jury, who are the final arbiters in such matters.

The plaintiff has a right of action under Section 7301 of the Code is no longer an undecided question in this State. The case of *Mayrant v. City of Columbia*, 77 S. C., 281, 57 S. E., 857, 10 L. R. A. (N. S.), 1094, was brought under Section 7345 of the Code, but the reasoning and conclusions of the case are applicable to the provisions of Section 7301. From that case we quote: "The question here is, did the damages result through a defect in the street, or by reason of defect or mismanagement of anything under the control of the defendant. That a munici-

pality has the right to change the grade of its streets, either by cutting down or by building up the surface, and that no action for damages to property resulting therefrom lies against it, is well settled in this state. Certainly such action on the part of the corporation often leads to great inconvenience and expense, and often causes a marked depreciation in the value of the property, yet the right cannot be denied. As has often been said, such a change is *damnum absque injuria*. It rests upon the principal that the municipality has the same right to improve its property as the landowner has to enhance the benefits and convenience of his land. With the rights, however, come the corresponding liabilities. As was said by Farnham in his work on Waters and Water Rights, 910: 'Very few cases present the simple fact of changing the grade so that the course of the water between the adjacent land is merely altered. Additional facts usually exist, such as gathering of water, or the change of outlet for a flow coming from an extended territory. Either of these facts would give rise to an action against a private individual, and there is no reason why it should not do so against a municipality. * * *.' "

After quoting Section 2010a of the Civil Code, now Section 7301, Code 1932, the opinion in the above case continues:

"Having reached the conclusion that the above-considered statute gave the plaintiff the right to maintain his action, we do not think it necessary to construe the last-quoted act.

"The contention of the defendant, however, is that injuries here complained of were a nuisance *per se,* and the plaintiff has alleged no special nor peculiar damages. The facts alleged do not support this contention. It seems that the plaintiff's property was so situated that it alone was flooded and injured. The damage was peculiar to this special piece of land, and nowhere in the complaint is a single allusion made to other property. The neighborhood is not involved in the issue. This contention of the defendant therefore must be overruled."

In the case of *City of Columbia v. Melton,* 81 S. C., 356, 62 S. E., 245, 246, 399: " * * * Mrs. Mary McCreary Melton filed a petition in the court of common pleas, in which she alleged that the city of Columbia, by means of pipes, was discharging surface water on her lands, which was emptied into her private ditch or drain; that in times of heavy rains the flow of surface water was unusual; and that this was caused by a change in the construction of drains and the method of drainage in certain portions of the city."

The Circuit Court, in the above case, ordered a jury to be empanelled to assess the damages to which the plaintiff was entitled. The plaintiff brought action to enjoin the defendant from proceeding with the condemnation proceedings. The defendant answered setting up, *inter alia,* the following: " 'That the plaintiff has caused the grade of the said streets and the drains thereon to be changed within the last 20 years, and that by reason of such changes it has shortened, accelerated, and concentrated the flow of the surface waters from the area drained by said streets, and diverted it from its former more circuitious course, and by the changes made in the drains on the said Elmwood Avenue now discharges the said surface waters upon the lands of this defendant in concentrated flow * * *."

Plaintiff demurred to the answer on the ground that it did not state facts sufficient to constitute a defense to the cause of action. The demurrer was overruled and plaintiff appealed. The Supreme Court sustained the order overruling the demurrer without stating its grounds, but we think that it is a legitimate deduction that the Court thought that the language above quoted from the answer does state a cause of action.

In the case of *Johnson v. White,* a case from the Supreme Court of Rhode Island, reported in 2 6 R. I., 207, 58 A., 658, 65 L. R. A., 250, this is found:

"This action is brought to recover damages which the plaintiff claims to have sustained by reason of the turning

of surface water upon his land by the acts of the defendant city. The declaration alleges that the defendant constructed a large culvert or drain at the junction of Nashua and Ann Mary Streets, and thereby collected quantities of surface water, and discharged the same artificially in a channel over certain intervening land onto a large tract of land belonging to plaintiff. It also alleges that the water so discharged was far in excess of the amount that would have been discharged upon the plaintiff's premises if said culvert or drain had not been constructed as aforesaid, and that, by reason of its being collected as aforesaid and flowing across plaintiff's premises, it washed out a deep channel across the same, and rendered a part thereof unfit for tillage or pasturage, and decreased the value thereof.

\*　\*　\*

"We think, however, that the principle involved in the *Inman case (Inman v. Tripp,* 11 R. I., 520, 23 Am. Rep., 520) is applicable here. That principle, briefly stated, is this: That no one has a right to collect surface water in any considerable quantity upon his own premises, and then turn the same in a concentrated form upon the premises of his neighbor in such a manner as to cause him damage. \*　\*　\*"

In the body of the opinion and in the comprehensive note attached thereto, there is abundant citation of authorities in support of the conclusion of the Court.

We forbear the citation of more authorities.

All exceptions are overruled and the judgment of the Court below is affirmed.

Messrs. Justices Baker, Fishburne and Stukes and Mr. Acting Associate Justice L. D. Lide concur.